Grant J. Benham, Paul Darlington and Richard S. Darlington, Appellants *v.* Board of Supervisors of Middletown Township and John C. Snyder et al. and William L. Potter et al., Appellees.

Argued October 7, 1975, before President Judge Bow-MAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*Holbrook M. Bunting, Jr.*, with him *John P. Trevaskis, Jr., Jan Z. Krasnowiecki*, and, of counsel *Trevaskis, Doyle, Currie, Nolan & Bunting*, for appellants.

*Thomas J. Beagan, Jr.*, with him *Timothy B. Barnard*, for appellee.

*John C. Snyder*, with him *Leslie B. Potter*, and *Lentz, Riley, Cantor, Kilgore & Massey, Ltd.*, for intervening appellees.

OPINION BY JUDGE WILKINSON, December 8, 1975:

This case is an appeal by Grant J. Benham, Paul Darlington and Richard S. Darlington (appellants) from an order of the Delaware County Court of Common Pleas upholding the decision of the Middletown Township Board of Supervisors (Board) in which it refused to adopt a curative amendment proposed by appellant Benham. Appellants also assign as error another order of the same court allowing certain persons to intervene in the appeal proceedings before the lower court. We affirm both orders.

Grant J. Benham is the equitable owner and Paul Darlington and Richard S. Darlington are the legal owners of 155 acres of land situated in Middletown Township, Delaware County (Darlington property).

On June 15, 1973, pursuant to Sections 609.1 and 1004(1)(b) of the Pennsylvania Municipalities Planning Code (MPC), Act of July 31, 1968, P. L. 805, *as amended*, 53 P. S. §§10609.1, 11004(1)(b), appellant Benham filed an application with the Board for a curative amendment. The application substantively challenged the validity of the Township zoning ordinance and map on the grounds that they unconstitutionally prohibited the use of property located within the Township for the development and sale of townhouses. A curative amendment was proposed to remedy this alleged illegality by creating a new R4-B Residence District which authorizes townhouse development.

Benham also submitted a proposed amendment to the zoning map to change the classification of the Darlington property to the new zoning district. The Darlington property was, and continues to be, within an R1-A Residence District which, except for certain non-residential uses, limits the use of property to one single family detached home per 80,000 square feet.

Hearings were held by the Board from August 8, 1973, to May 23, 1974. On June 26, 1974, the Board issued a decision, containing 33 findings of fact, which rejected the application and refused to adopt the proposed curative amendment. An appeal was taken to the Delaware County Court of Common Pleas in which certain property owners were permitted to intervene. The court, without taking additional evidence, dismissed appellants' appeal and thereby upheld the decision of the Board. Appellants now appeal to this Court on seven grounds.

Before considering the merits of appellants' contentions, however, we must emphasize that in appeals of cases arising out of Section 1004 of the MPC, 53 P.S.

§11004, where the governing body has made its own findings of fact and the court of common pleas on review does not receive additional evidence, this Court is bound by those findings of fact made by the governing body which are supported by substantial evidence. *Robin Corporation v. Board of Supervisors of Lower Paxton Township,* 17 Pa. Commonwealth Ct. 386, 332 A.2d 841 (1975).

As their first two grounds of appeal, appellants allege that the lower court erred in failing to find that the Township zoning ordinance is unconstitutional as being de jure or de facto exclusionary. As their third ground, appellants urge that this exclusion is evidenced by the failure of the Township to provide for its "fair share" of anticipated regional housing requirements, and that the lower court erred in holding otherwise.

A zoning ordinance is presumed valid and constitutional, thus placing a heavy burden on anyone challenging the ordinance to prove the contrary. *Ellick v. Board of Supervisors of Worcester Township,* 17 Pa. Commonwealth Ct. 404, 333 A.2d 239 (1975). In proving de jure exclusion of a particular use, a challenge must demonstrate that the ordinance, on its face, completely bans such use. *See id.* In proving de facto exclusion, the proponent bears the onus of showing that, even though the ordinance on its face permits a specific use, the ordinance as applied effectively prohibits such use throughout the municipality. *Hodge v. Zoning Hearing Board of West Bradford Township,* 11 Pa. Commonwealth Ct. 311, 312 A.2d 813 (1973). We concur with the court below that appellants did not meet these burdens.

Appellants point to Section 1211 of the Township ordinance which excludes "row dwellings" in any conventional zoning district.[1] Since townhouses are no more

---

1. Section 1211 provides:

"No lot or premises shall be used for *row dwellings* or as a junk or automobile wrecking yard, or as a trailer camp." (Emphasis added.)

than embellished row houses, this prohibition would invalidate the ordinance. *Camp Hill Development Co., Inc. v. Zoning Board of Adjustment*, 13 Pa. Commonwealth Ct.. 519, 319 A.2d 197 (1974). However, we agree with the lower court that Section 1211 was repealed on August 10, 1970, when the Township enacted Ordinance No. 136, Section 2 of which added a Planned Residential Development (PRD) article to the Township zoning regulations. Section 953 of the PRD article expressly provides for townhouse development[2] while Section 3 of Ordinance No. 136 repealed "[a]ll ordinances and parts of ordinances inconsistent herewith. . . ."

Appellants, however, contend that the PRD article does not satisfy the Township's responsibility to provide a plan for townhouse development under the mandate of *Girsh Appeal*, 437 Pa. 237, 263 A.2d 395 (1970). Rather, appellants claim that townhouses ought to be authorized as of right by a standard type of districting. We cannot agree. *Girsh* only requires that a municipality make a reasonable provision for a particular use. The instant PRD article satisfies this requirement by providing a landowner, who qualifies for PRD,[3] an option

2. "SECTION 953—USES PERMITTED:
   "(a) Individually owned dwelling units as follows:
   ". . . .
   "(3) single family attached homes which shall be arranged as town houses and shall provide common areas between and around groups or clusters of houses subject to the provisions of an agreement providing for ownership and maintenance of said common areas as hereinafter provided; the terms of said agreement shall be subject to the approval by the Board of Supervisors."

3. Section 952 of the PRD article sets forth seven conditions which must be met to qualify for a PRD including:
   "(a) Any tract of land shall be in one ownership, or be the subject of preliminary and final applications filed jointly by the owners of the entire land;
   . . . .

to construct townhouses rather than develop his property in accordance with the normal zoning classification. The fact that the Board has the power to disapprove PRD applications does not deprive the PRD article of "plan" status, particularly since the discretion of the Board in withholding approval is circumscribed by Section 709(b) of the MPC, 53 P.S. §10709(b). *Doran Investments v. Muhlenberg Township Board of Commissioners,* 10 Pa. Commonwealth Ct. 143, 309 A.2d 450 (1973).[4]

Furthermore, as a result of the repeal of Section 1211 by Section 3 of Ordinance No. 136, townhouses are permitted in other zoning districts as "multiple dwellings" as that term is defined by the zoning ordinance.[5] Apt-1 Apartment District expressly permits multi-family dwellings while R4-A Residence and B Business Districts permit multiple dwellings as special exceptions. Since special exceptions are considered permitted uses, *Berlant v. Lower Merion Township Zoning Hearing Board,* 2 Pa. Commonwealth Ct. 583, 279 A.2d 400 (1971), the Township zoning ordinance consequently authorizes townhouse development in three specific zoning districts as well as under PRD. Accordingly, appellants have failed to prove de jure exclusion and the lower court did not err in so holding.

A similar conclusion applies to appellants' de facto exclusionary argument. Appellants basically object that

---

"(d)   in order to qualify under this ordinance as a Planned Residential Development (PRD), said development shall provide for a minimum of fifty (50) acres of land."

4.   We reject appellants' request that we take judicial notice that townships are imposing ad hoc conditions on PRD's, which we authorized in *Doran Investments* if they be in the public interest, to delay or completely interdict such developments. If such be the case, it is the affirmative burden of appellants to prove it.

5.   "MULTIPLE DWELLING:  A building designed for and occupied exclusively as a residence for two or more families living independently of one another."

the density provision of the PRD article, particularly as it applies to property subject to large lot zoning, effectively prohibits townhouse development. Section 954 of the PRD article, as amended, restricts the maximum density of PRD's to either one housing unit per 40,000 square feet or the density prescribed by the underlying zoning classification, whichever is greater. Appellants allege that all desirable residential land in the Township is zoned for density maximums of no more than one unit per 40,000 square feet. Further, appellants maintain that, except for a small tract physically unsuited for any type of development, Apt-1 Apartment, B Business and R4-A Residence Districts, which are higher density areas and which themselves permit townhouse construction without resort to the PRD option, do not contain any vacant land economically feasible for townhouse development.

However, appellants' assertion of *de facto* exclusion is contrary to the Board's findings of fact which are founded on substantial evidence. Indeed, appellants have admitted that the Darlington property, which is under large lot zoning, could be developed for townhouses under the PRD article.[6] Moreover, appellant Benham has received approval for and is constructing townhouses as a PRD in another area of the Township.

Further, we disagree with appellants' position that property located in the higher density apartment, business, and residence districts must be vacant to be available for townhouse development.

"While it may be inherently discriminatory for a township to totally exclude a use from its borders, we fail to see any analogy by which we could reason

6. The Township ordinance, as it applies to the Darlington property, permits the construction of one single family detached housing unit per 80,000 square feet under an R1-A Residence classification, or the construction of two townhouse units per 80,000 square feet under the PRD article.

that a legitimately appropriated area for a specific use which has been saturated is in the same posture as a total prohibition of that use within the municipality." *Groff Appeal*, 1 Pa. Commonwealth Ct. 439, 442, 274 A.2d 574, 575 (1971).

Consequently, appellants did not meet their burden of proving de facto exclusion and the court below was not in error to so find.

Nor did the court err in holding that the Township provides for its "fair share" of regional housing needs as such requirements are expected to grow by 1990 in projections developed by the Delaware County Planning Commission. The "fair share" test, as applied by our Supreme Court, appears to be that municipalities may not adopt a zoning ordinance, the primary purpose of which is to either totally exclude or selectively permit the entrance of newcomers by effectively restricting the population to near present levels. *Township of Willistown v. Chesterdale Farms, Inc.* Pa. , 341 A.2d 466 (1975). There is not sufficient evidence here to demonstrate that the Township ordinance, particularly its density provisions, were enacted for any such purpose. Rather, there is more than substantial evidence to support a contrary conclusion as stated in the Board's findings of fact. As the lower court noted, even appellants' own witness testified that the Township, through a full range of density zoning, provides for its "fair share" of regional housing requirements.

As their fourth ground of appeal, appellants contend that the lower court should not have given controlling weight to the Board's findings of fact, but should have independently reviewed the record and made its own factual conclusions. Appellants claim that in a curative amendment proceeding, the governing body, which is not required to make any findings of fact, is in reality the defendant and thus cannot simultaneously be an independent judge of the validity of its own ordinance.

Rather, appellants, relying on *Ohio Valley Water Company v. Ben Avon Borough*, 253 U. S. 287 (1920), and a footnote in *Pickering v. Board of Education of Township High School District 205*, 391 U. S. 563, 578 n.2 (1968), urge that the court below was required by fundamental due process to conduct a de novo review of the record.

While we agree that a governing body is not required to make findings of fact in a curative amendment proceeding, Section 1010 of the MPC, 53 P.S. §11010, anticipates not only that such findings may be made, but also that such findings may not be disturbed on appeal if the reviewing court fails to take additional evidence and if the findings are supported by substantial evidence.[7] Neither *Ben Avon* nor the footnote in *Pickering* invalidates this provision, particularly since those authorities constitute questionable precedent as we discussed in *Surrick v. Zoning Hearing Board of the Township of Upper Providence*, 11 Pa. Commonwealth Ct. 607, 314 A.2d 565 (1974), and which we need not repeat here.

However, assuming precedential value may be attributed to *Ben Avon* and the *Pickering* footnote, appellants' reliance thereon is misplaced. Those authorities only require that an adequate opportunity for independent judicial review be provided. Here, appellants were given such an opportunity. Section 1004 (1) of the MPC, 53 P. S. §11004 (1), provides that the validity of a zoning ordinance or map may be challenged either before the zoning hearing board for a report on the constitutionality of the ordinance or map, or before the governing body

---

7. Section 1010 provides, in pertinent part:

"If the record below includes findings of fact made by the *governing body*, board or agency whose decision or action is brought up for review and *the court does not take additional evidence or appoint a referee to take additional evidence, the findings of the governing body*, board or agency *shall not be disturbed by the court if supported by substantial evidence.*" (Emphasis added.)

with a request for a curative amendment. Should a landowner follow the latter alternative and be denied his request for a curative amendment, he is permitted, pursuant to Section 1004(3) of the MPC, 53 P. S. §11004(3), to resubmit his challenge before the zoning hearing board. Since a zoning hearing board is considered an independent quasi-judicial body, *see Surrick, supra,* it is clear Section 1004 of the MPC provided appellants with an adequate opportunity for judicial review, which they, however, failed to pursue. Consequently, we hold the court below did not err in failing to independently review the record.

As their fifth ground of appeal, appellants maintain that the lower court erred in failing to hold the Board's findings contrary to the weight of the evidence. We disagree. Our review of the extensive record shows the findings of the Board grounded upon substantial evidence. Consequently, under Section 1010 of the MPC, 53 P. S. §11010, since the court below did not take additional evidence, it was, as this Court is, bound by such findings of fact and thus not in error.

As their sixth ground of appeal, appellants contend that the lower court erred in refusing to consider their argument that the Township's zoning ordinance, as applied to the peculiar characteristics of the Darlington property, is unreasonable and amounts to confiscation of private property without just compensation contrary to the Fifth and Fourteenth Amendments of the United States Constitution. The court below held that the argument was not properly raised since it was not expressly stated in the hearing application of appellants as required by Section 1004(2)(a) of the MPC, 53 P. S. §11004(2)(a).[8] In that application, appellants' only ex-

---

8. "The landowner shall make a written request to the board or governing body that it hold a hearing on his challenge. The *request shall contain a short statement reasonably informing the board or the governing body of the matters that are in issue and the grounds for the challenge.*" (Emphasis added.)

press grounds for violation of the Fifth and Fourteenth Amendments concerned exclusion. Nevertheless, appellants assert that mere averments of Fifth and Fourteenth Amendment violations also impliedly raise traditional confiscation claims.

However, we need not decide the merits of the court's reasoning nor that of the appellants, since a claim of confiscatory taking as the zoning ordinance is applied to one particular property is not properly raised as a challenge under Section 1004 of the MPC, 53 P.S. §11004. Rather, such claim must be brought as a request for a variance before the zoning hearing board pursuant to Section 912 of the MPC, 53 P.S. §10912. *Robin Corporation, supra.* Therefore, the court below did not err in refusing to hear appellants' confiscation arguments.

Finally, appellants urge that certain property owners were erroneously allowed to intervene in the appeal before the lower court. Intervention was permitted pursuant to Pa. R.C.P. No. 2327 (4),[9] which provides:

> "At any time during the pendency of an action, a person not a party thereto shall be permitted to intervene therein, subject to these rules if
>
> ". . . .
>
> "(4) the determination of such action may affect any legally enforceable interest of such person whether or not he may be bound by a judgment in the action."

The court below found that the intervening appellees were owners of land located in the Township in the im-

---

9. Section 1009 of the MPC, 53 P. S. §11009, provides for intervention in all zoning appeals from a board or agency of a municipality. For intervention by parties other than the municipality and owners or tenants of property directly involved, Section 1009 states it "shall be governed by the Rules of Civil Procedure." Since the intervening appellees were not owners or tenants of property directly involved, the court ·below invoked Pa. R.C.P. No. 2327 (4).

mediate vicinity of the Darlington property and, therefore, had the requisite interest to intervene under Pa. R.C.P. No. 2327 (4). We cannot disagree. *Esso Standard Oil Company v. Taylor,* 399 Pa. 324, 159 A.2d 692 (1960).

Moreover, the lower court was not in error by failing to first determine whether the interests of the intervenors were adequately represented by the Board before allowing intervention. Such a determination is required only if intervention is refused under Pa. R.C.P. No. 2329. *See Peirce Junior College v. Schumaker,* 17 Pa. Commonwealth Ct. 604, 333 A.2d 510 (1975).

Affirmed.

———

DISSENTING OPINION BY JUDGE BLATT:

The essential matter at issue in this case is whether or not townhouse construction is prohibited in Middletown Township, Delaware County. Such a prohibition would, of course, be unconstitutional. *Camp Hill Development Co., Inc. v. Zoning Board of Adjustment,* 13 Pa. Commonwealth Ct. 519, 319 A.2d 197 (1974). And, while the majority of the Court now holds that the Middletown Township Zoning Code allows for townhouse development, I believe that it does not.

The majority cites Article I, Section 100 of the Zoning Code as permitting townhouses as "multiple dwellings" in certain zoning districts, noting that a multiple dwelling is defined therein as "[a] building designed for and occupied exclusively as a residence for two or more families living independently of one another." Townhouses, however, are single family homes, each attached by a common party wall to a similar home next to it. Each is a separate building, and it seems to me, therefore, that a row of these homes would not fall within the township's definition of a multiple dwelling.

More importantly, the majority holds that townhouses are also permitted by Section 2 of Ordinance No. 136

which added a Planned Residential Development (PRD) article to the township zoning code, and which expressly allows for "single family attached homes which shall be arranged as town houses." Section 953(a)(3) of Ordinance No. 136. It is true, of course, that Article VII[1] of the Municipalities Planning Code (MPC) enables municipalities to provide for Planned Residential Developments and also extends wide latitude to them in establishing regulations and conditions necessary for approval of such plans. The regulations under Ordinance No. 136, however, restrict the maximum density of PRD's to no greater than one housing unit per 40,000 square feet or approximately to one housing unit per acre, with each townhouse also required to have a minimum lot area of 4,000 square feet. These requirements hardly seem reasonable. For every townhouse which is constructed on a 4,000 square foot lot, 36,000 square feet of open space must be set aside, and such a requirement hardly seems to be related to townhouse usage. Moreover, under such restrictions, the purchase price of land needed to support townhouse PRD development can effectively make the developed properties unmarketable. Here, for example, the appellant testified that a property developed in accordance with the PRD restrictions would cost approximately $49,000, whereas such townhouses could be marketed only in a $30,000 to $40,000 range. Consequently, by making the development of townhouse PRD's unfeasible, the township effectively prohibits townhouse construction, and I believe that such de facto exclusionary zoning cannot be upheld. *Shomo v. Derry Borough*, 5 Pa. Commonwealth Ct. 216, 289 A.2d 513 (1972). I would, therefore, reverse the court below.

Judge KRAMER joins in this dissent.

---

1. Act of July 31, 1968, P. L. 805, *as amended*, 53 P. S. §10701 et seq.