Henry A. Berger and Croxley Green Associates
*v.* Board of Supervisors of Whitpain Township,
Appellant.

Henry A. Berger and Croxley Green Associates
*v.* Whitpain Township, R. Patterson Mann and
Five Points Civic Association. R. Patterson
Mann and Five Points Civic Association, Appellants.

Argued June 7, 1977, before President Judge Bow-
man and Judges CRUMLISH, JR., WILKINSON, JR., MEN-
CER, ROGERS and BLATT.  Judge KRAMER did not par-
ticipate.

*Charles A. Kerlavage,* for Board of Supervisors of Whitpain Twp.

*Robert J. Sugarman,* with him, of counsel, *Dechert, Price & Rhoads,* for Mann and Five Points Residents Assoc.

*John G. Kaufman* and *Morris Gerber,* with them *Marc D. Jonas* and *Bean, DeAngelis and Kaufman,* for Henry A. Berger and Croxley Green Associates.

OPINION BY JUDGE ROGERS, August 8, 1977 :

This is a zoning case. The appellees, Henry E. Berger and Croxley Green Associates, own a 50 acre tract of land located in Whitpain Township, Montgomery County, not far from Norristown. This land is an R-1 Residence District of the Whitpain Township Zoning ordinance where residential development is restricted to single family residential dwellings on lots containing a minimum of 30,000 square feet. The appellees desire to build a development of townhouses on their land. To this end, they filed with the Township Board of Supervisors an application for a curative amendment pursuant to Sections 609.1 and 1004 (1)(b) of the Pennsylvania Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. §§10609.1, 11004(1)(b), challenging the validity of the zoning ordinance as assertedly prohibiting the townhouse development throughout the Township. The curative amendment application requested the creation of a new TH-Townhouse District in which townhouses would be a permitted use and was

accompanied by plans for a 250 unit development, to be offered for sale from $55,000 to $60,000 each.

The Board of Supervisors conducted full public hearings but eventually refused the appellees' request. The bases for the Supervisors' decision were: (1) that the Township did not in fact totally ban townhouses as witnessed by its former approval of 1995 and the actual construction of 520 units, and (2) that townhouses were a permissible use under the Zoning Ordinance in the R-3 Multi-Family District and, by special exception, in the I Limited Industrial District. The present appellees appealed the Supervisors' decision to the Montgomery County Common Pleas Court. The Township and R. Patterson Mann, a landowner, and the Five Points Civic Association, the last two jointly, were permitted to intervene below in support of the Supervisors' decision.

The court below first dismissed Berger and Croxley Green's appeal. It later, upon their application, granted reargument and eventually reversed the Board of Supervisors' decision and remanded the appellees' plans for review by the appropriate officials pursuant to Section 1011 of the MPC, 53 P.S. §11011. The court below concluded that the Whitpain Township Zoning Ordinance prohibited townhouse development throughout the municipality. The Township, Mr. Patterson and the Five Points Civic Association have appealed.

Since the court below received no additional evidence our review is confined to a determination of whether the Board of Supervisors abused its discretion, committed an error of law, or made findings not supported by substantial evidence in the record. *Waynesborough Corporation v. Easttown Township Zoning Hearing Board*, 23 Pa. Commonwealth Ct. 137, 350 A.2d 895 (1976). The crucial issue of whether townhouse development falls within any of the categories specified in the zoning ordinance is a question

of law and subject to our review. *Ellick v. Board of Supervisors of Worcester Township,* 17 Pa. Commonwealth Ct. 404, 333 A.2d 239 (1975).

The burden of proving clearly and unmistakably the unconstitutionality of a zoning ordinance is upon the person so asserting; and the presumptions are in favor of the constitutionality of legislation, including municipal ordinances. *Bilbar Construction Co. v. Easttown Township Board of Adjustment,* 393 Pa. 62, 141 A.2d 851 (1958). However, the ordinance which fails entirely to provide for a needed and desired kind of residential use is exclusionary and as a consequence unconstitutional. *Girsh Appeal,* 437 Pa. 237, 263 A.2d 395 (1970). In *Girsh Appeal,* just cited, the subject of the exclusion was apartment houses. This Court, consistent with that decision, has held that a zoning provision totally prohibiting townhouse uses is likewise unconstitutional. *Dublin Properties v. The Board of Commissioners of Upper Dublin Township,* 21 Pa. Commonwealth Ct. 54, 342 A.2d 821 (1975); *Westrum Enterprises v. Board of Commissioners of Upper Dublin Township,* 21 Pa. Commonwealth Ct. 51, 343 A.2d 685 (1975); *Ellick v. Worcester Township, supra; Camp Hill Development Co., Inc. v. Zoning Board of Adjustment,* 13 Pa. Commonwealth Ct. 519, 319 A.2d 197 (1974).

The appellants, Mann and Five Points Civic Association, say that the lower court erred in concluding that townhouse development was not a permitted use in the R-3 Multi-Family District of Whitpain Township. They suggest support for the Board of Supervisors' conclusion that townhouse development is permitted in the R-3 district because the Board had in the past approved the existence of upwards of 1900 units. In response to the same contention in *Dublin Properties v. Board of Commissioners of Upper Dublin Township, supra,* we wrote:

The fact that the Township has permitted townhouse development, however, does not cure the defect in the ordinance, i.e. the failure to provide for townhouse development as a matter of right.

21 Pa. Commonwealth Ct. at 59, 342 A.2d at 823. Moreover, the record reveals that approval of at least some of this townhouse development was given pursuant to a Planned Residential Development Ordinance, since repealed.

Turning our attention to the text of the Whitpain Township Zoning Ordinance, we find that at the time the appellees made their challenge, the Whitpain Ordinance Section 551 provided that any "multi-family dwelling which constitute[s] a single operating or proprietary unit" should be a permitted use in the R-3 Multi-Family District. But Section 200(5)(c) of the ordinance defined a "multiple dwelling" as:

A building not a Single Family Dwelling nor a Two Family Dwelling, designated for and occupied exclusively for dwelling purposes by three or more families living independently of one another, *not a rowhouse,* but customarily called an apartment house. (Emphasis added.)

Townhouses are not essentially different from rowhouses. *Benham v. Board of Supervisors of Middletown Township,* 22 Pa. Commonwealth Ct. 245, 249, 349 A.2d 484, 487 (1975); *Camp Hill Development Co., Inc. v. Zoning Board of Adjustment, supra.* Therefore, the express exclusion of rowhouses from the definition of multiple dwellings otherwise permitted in the R-3 district excluded townhouses. We have considered and rejected in our prior decisions the argument that Section 200(5)(c) was intended only to exclude "blocks upon blocks" of rowhouses. Townhouse development is expressly forbidden in the R-3 zoning district of Whitpain Township.

Whitpain Township contends that townhouse use is permitted in its I Light Industrial District by special exception pursuant to Section 801(G)(d) of its Zoning Ordinance. Article VIII of the Ordinance is titled "I Limited Industrial Districts," and the first two sections read in full as follows:

Section 800. Declaration of Legislative Intent: In expansion of the declaration of the legislative intent contained in Article I, Section 101, of this Ordinance, it is hereby declared to be the intent of this Article, with respect to limited industrial zones (as adopted by ordinance and shown on the Whitpain Township zoning map attached hereto) to establish reasonable standards for the height and size of buildings, the areas and dimensions of yards and open spaces and the provision of facilities and operation of industries to minimize traffic congestion, noise, glare, air pollution, water pollution and fire and safety hazards in industrial districts.

In an 'I' Limited Industrial District, the following regulations shall apply.

Section 801. Use Regulations: The specific use permitted in this district shall be the erection, construction, alteration, or use of buildings or premises for the following uses and no other:

A. Any industrial use not specifically excluded, which meets the provisions of Sections 802 to 817 inclusive, of this Article.

B. Agriculture.

C. A use permitted in RI District, with buildings located and constructed as therein provided.

D. Dwelling quarters for watchmen and caretakers employed on the premises shall be

permitted in connection with any industrial establishment.

E.   Medical Facilities.

F.   Banking Facilities.

G.   The Zoning Hearing Board may, in appropriate cases, and subject to appropriate conditions and safeguards, authorize by special exception the following uses:

(a)   Office Buildings not to exceed fifty (50) feet in height.

(b)   Theaters.

(c)   Restaurants.

(d)   Any other lawful and legitimate use not otherwise specifically provided for in this Ordinance.

H.   The following uses shall not be permitted:

[There follows a list of the forbidden uses from Abbatoir to Tar Distillation or manufacture.]

Succeeding sections are numbered, titled and contain regulations of their subject matters, as follows: Section 802, Smoke Control; Section 803, Control of Dust and Dirt, Fly-Ash and Fumes, Vapors and Gasses; Section 804, Control of Noises; Section 805, Control of Odors; Section 806, Control of Glare and Heat; Section 807, Control of Vibration; Section 808, Control of Radioactivity or Electrical Disturbance; Section 809, Outdoor Storage and Waste Disposal; Section 810, Electric, Diesel, Gas or Other Power; Section 811, Industrial Waste or Sewage; and Section 812, Provision and Use of Water. Section 814 requires that no industrial lot size shall be less than two acres.

The court below concluded that townhouse development was not a permitted use in the I Limited Industrial District in Whitpain Township. We agree for a

number of reasons. First, the declaration of intent in Section 800 describing Article VIII's purpose as that of establishing standards for the "facilities and operation of industries" and the detailed regulations of industrial activities with which the bulk of the Article is concerned demonstrate that general residential use was not intended for the I Light Industrial District. Second, subsections 801(C) and 801(D) specify. the two residential uses permitted in the I Limited Industrial District—the former allowing single family dwellings and farms as provided for in the R-1 District, and the latter permitting dwelling quarters for watchmen and caretakers of industrial establishments. Third, Section 814 provides that water "for any . . . purposes whatsoever" must be supplied from offsite sources, a requirement notably absent in the regulations imposed on multi-family developments in Article V-A governing the R-3 Multi-Family District. Fourth, Section 814 establishes a minimum individual lot size of not less than two acres, an unlikely requirement if townhouse development were contemplated.

Finally, Section 801(G)(d), on which the appellants principally rely, provides that "[a]ny other lawful and legitimate use not otherwise specifically provided for in this ordinance" might be authorized by special exception. The insurmountable difficulty with trying to fit permission for townhouse development under this provision is that townhouses are not merely. "not otherwise specifically provided for" in the ordinance, they are expressly excluded as a permitted use by the ordinance's definition of a multiple dwelling. There is no more logic in saying that townhouses might be permitted by special exception pursuant to Section 800(G)(d) than there would be in saying that the uses specifically prohibited by Section 801(H) which immediately follows Section 800(G)(d) might nevertheless be authorized as a special exception.

The appellants, Mann and Five Points Civic Association, advance additional arguments in support of the Board of Supervisors' refusal of the appellees' request for curative amendment. The first is that the court below erred in reversing the Board without reference to an asserted finding by the Board that the plans presented with the request for curative amendment were, as they say in their brief, inadequate and unreasonable.[1] The appellants seem to contend that the plans and materials accompanying a request for curative amendment pursuant to Section 1004 of the MPC, 53 P.S. §11004, must be the finished plans submitted for subdivision approval under Article V of the MPC or for tentative or final approval of a planned residential development under Article VII. This is not what the statute requires. Section 1004 provides that plans and materials submitted with a curative amendment request "shall not be required to meet the standards necessary for preliminary, tentative or final approval or for the issuance of a permit so long as they provide reasonable notice of the proposed use or development and a sufficient basis for evaluating the challenged ordinance or map in the light thereof." The plans here submitted fit that description.

---

[1] We have read the Board of Supervisors' brief statement refusing the request and observe no finding that the plans were "inadequate or unreasonable." After declaring, somewhat illogically, that the township ordinance did not exclude townhouse development in the R-3 District, but that if it did, the use was allowed in the "I" Light Industrial District as one not otherwise provided for by the Ordinance, the Supervisors said that the applicant had not shown that their land could not be developed in conformity with its R-1 zoning; that the "drainage area would be badly upset" by the appellees' proposal; that the "amount of runoff and high water level" would cause problems; that the amount of coverage "would effect [sic] the water quality of the Prophecy Creek"; and that the grant of the request would be spot zoning.

Mann and the Five Points Civic Association also contend, based on evidence which they adduced of the asserted effect of the construction of townhouses on this 50 acre tract on natural, scenic and historic values of the area, that the approval of the development violates Article I, Section 27 of the Pennsylvania Constitution which declares that the people of Pennsylvania have the right to the preservation of such values. The appellants seem to say that the decision that the appellees are entitled as of right to place townhouses on their land because the township has unconstitutionally banned this legitimate residential use within its borders, gives the appellees a charter to despoil the neighborhood. The court below did not approve the appellees' plan in detail; it merely ordered that the appellees might construct a townhouse development as generally proposed. It remanded the appellees' plans to the Board of Supervisors, as by Section 1011 of the MPC, 53 P.S. §11011 it was empowered to do. Both Section 1011 and the court's order in this case permit existing relevant township regulations to be imposed with respect to the development. We emphasize that no permits have yet been issued or will be issued without compliance with all such regulations and restrictions. The regulation of multifamily developments contained in Article V-A of the zoning ordinance are detailed and facially, at least, adequate to meet the appellants' environmental concerns based on Article I, Section 27. It is, after all, the appellees' purpose to create dwelling houses to sell for at least $55,000. Finally, in this vein, the action of the Township in issuing building permits may, of course, be challenged. Section 1005 of the MPC, 53 P.S. §11005.

Order affirmed.

ORDER

AND NOW, this 8th day of August, 1977, the order of the court below is affirmed.

———

DISSENTING OPINION BY JUDGE MENCER:

I respectfully dissent. I cannot conclude that the zoning ordinance in question here prohibits townhouse development throughout Whitpain Township. I am of the view that townhouse use is permitted by special exception pursuant to Section 801(G)(d) of the Whitpain Township Zoning Ordinance.

Section 801(G)(d) provides that "[a]ny other lawful and legitimate use not otherwise specifically provided for in this ordinance" may be authorized by special exception. I am satisfied that this catchall section was intended to prevent an attack on the zoning ordinance as being exclusionary in contravention of *Girsh Appeal,* 437 Pa. 237, 263 A.2d 395 (1970).

The majority argues that townhouses are not merely "not otherwise specifically provided for" in the ordinance but are expressly excluded as a permitted use by the ordinance's definition of a multiple dwelling. My response to this contention is that townhouses are *so excluded* only in the R-3 Multi-Family District *but allowed,* by special exception, in the I Limited Industrial District. *Compare Benham v. Middletown Township Board of Supervisors,* 22 Pa. Commonwealth Ct. 245, 349 A.2d 484 (1975).

The interpretation placed on Section 801(G)(d) by the majority seems to me to make that section almost meaningless, whereas I deem it to be the safety valve which precludes an exclusionary zoning challenge. Therefore, I would reverse and reinstate the decision of the Whitpain Township Board of Supervisors.