J. Richard Fretz and Elizabeth Fretz, his wife, Appellants *v.* Hilltown Township Board of Supervisors, Appellee.

Argued April 2, 1979, before Judges WILKINSON, JR., BLATT and DiSALLE, sitting as a panel of three.

*J. Richard Fretz,* petitioner, for himself.

*Charles S. Wilson,* with him *David MacFarland,* for respondent.

OPINION BY JUDGE WILKINSON, JR., May 21, 1979:

This case presents an appeal from an order of the Court of Common Pleas of Bucks County which sustained a decision of the Hilltown Township Board of Supervisors (Board) rejecting appellants' proposed curative amendment to the applicable zoning ordinance of Hilltown Township (Township). We affirm.

Appellants are the owners of a tract of land consisting of approximately 68 acres. Since its purchase in 1972, appellants' land has been located in an area designated "R-50 Residential and Agricultural District" under the applicable zoning ordinance.[1] Single-

---

[1] The subject tract is now situated in a district denominated "RR Rural Residential" by virtue of a new zoning ordinance enacted June 6, 1977. Appellants' proposed project is not permitted where planned under this new ordinance although greater provision for multiple dwellings of various types is made elsewhere in the Township. The parties vigorously argued the possible applicability under the present facts of the pending zoning ordinance doctrine. In light of our resolution of other aspects of this case we need not discuss the doctrine.

family detached dwellings situated on lots of at least 50,000 square feet constituted the only permissible residential use in the R-50 district.

On April 18, 1977, appellants filed an application for a curative amendment pursuant to Sections 609.1 and 1004(1)(b) of the Pennsylvania Municipalities Planning Code, Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§10609.1, 11004(1)(b). The application proposed the creation of an "R-T Residential District" in which the only permitted residential use would be semi-detached dwellings of the sort commonly known as twin homes. The Board rejected appellants' application on July 25, 1977 following a hearing on the matter. Appellants have brought the present appeal following an affirmance of the Board's determination by the common pleas court.

A duly enacted zoning ordinance carries with it a presumption of validity and the burden on one to sustain a substantive challenge is heavy. We are convinced after a thorough review of the record that appellants have failed to shoulder this burden.

Appellants assert, as the basis of their substantive challenge to the existing ordinance, a failure to provide for twin home construction anywhere in the Township. Alternatively, it is urged that even if twin homes are permitted by the ordinance's literal terms the area conceivably allotted to such use is so miniscule as to be tantamount to an outright exclusion. *Willistown Township v. Chesterdale Farms, Inc.*, 7 Pa. Commonwealth Ct. 453, 300 A.2d 107 (1973), *aff'g by an equally divided court, aff'd in part and modified in part*, 462 Pa. 445, 341 A.2d 466 (1975).

Guidance for the evaluation of appellants' arguments is found in this Court's opinion in *Benham v. Board of Supervisors*, 22 Pa. Commonwealth Ct. 245, 349 A.2d 484 (1975). With respect to appellants' initial contention, "[i]n proving de jure exclusion of a

particular use, a challenge must demonstrate that the ordinance, on its face, completely bans such use." *Id.* at 249, 349 A.2d at 487.

Article V of the Township's zoning ordinance was enacted by amendment in 1970 and provided for the creation of an "M-F Residential District." The ordinance there, in Section 501(2), pertinently provided for the following permitted uses: "[m]ultiple dwelling, apartment house or multiple dwelling group. . . ."

Since Article V contains no definitional section we would, unless a justification were offered for giving those terms a special or technical meaning, conclude that "multiple dwelling," according to its common and approved usage, comprehends among other uses a twin home. Section 1903 of the Statutory Construction Act of 1972, 1 Pa. C.S. §1903. As Judge WALSH wrote for the court below:

> The phrase 'multiple dwelling' is not defined in the ordinance and it must therefore be interpreted and applied according to its common and approved usage. . . . The word 'multiple' is defined as 'consisting of, including, or involving more than one.' Webster's Third New International Dictionary. We concur with the township's position that the wording of Section 501 reflects an intent to permit the erection of all conventional forms of housing.[2] (Citation omitted.)

*Cf. Warwick Land Development Corp. v. Board of Supervisors*, 31 Pa. Commonwealth Ct. 450, 376 A.2d 679 (1977).

Appellants seek to impute a special or technical meaning to the terms used in Section 501 by directing our attention to the definitional section of the ordi-

---

[2] Subsection (1) of Section 501 (not reproduced) permits any use allowed in the "R-30 Residential District" which, *inter alia*, permits a single-family detached dwelling.

nance. Section 103(7) provides the following definitions:

Dwelling.

a. Single-family. A building, on a lot, designed and occupied exclusively as a residence for one (1) family.

b. Two-family. A building, on a lot, designed and occupied exclusively as a residence for two (2) families.

c. Multiple-family. A building, on a lot, designed and used exclusively as a residence for three (3) or more families.

While the juxtaposition of Sections 103 and 501 of the ordinance seems to create some uncertainty, we think the difficulties are more apparent than real. Section 103(7) describes housing forms in terms of the number of families occupying a structure. When this subsection is considered in context with subsection (3)[3] of the same Section it becomes clear that "multiple dwelling" and "multiple-family dwelling" are separate and distinct concepts.

Turning now to appellants' alternate contention it should be recalled that "[i]n proving de facto exclusion, the proponent bears the onus of showing that, even though the ordinance on its face permits a specific use, the ordinance as applied effectively prohibits such use throughout the municipality." *Benham, supra* at 249, 349 A.2d at 487.

With respect to this point we need only briefly point out that appellants utterly failed to carry the burden of producing evidence to support this argu-

---

[3] Section 103(3) reads in pertinent part:

a. Detached. A building which has no party wall.

b. Semi-detached. A building which has only one (1) party wall in common with an adjacent building.

c. Attached. A building which has two (2) party walls in common with adjacent buildings.

ment. The only evidence in the record indicated that land was available for multiple dwelling construction in the M-F District. No figures were offered demonstrating how much or how little was available nor what relationship such area bore to the total of the Township's land area. Nor was any demonstration of the magnitude of the demand for such housing attempted.

Since our resolution of appellants' argument relative to the issue of the ordinance's exclusion of twin homes has made any discussion of the other issues raised in this appeal unnecessary, we will enter the following

#### ORDER

AND Now, May 21, 1979, the order of the Court of Common Pleas of Bucks County at No. 77-8147-08-5, dated February 28, 1978, dismissing the appeal of J. Richard Fretz and Elizabeth Fretz, his wife, is hereby affirmed.