# Weiss v. Whitpain Township Zoning Hearing Board

STANZIANI, *J.*, March 1, 1982—

## STATEMENT OF FACTS

The tract of ground which is the subject of the instant Curative Amendment has been owned for many years by the appellants. The tract has a fron-

tage on Arch Road of 1,862 feet and a frontage on Township Line Road of 1,492 feet.

Appellants propose to develop the ground as a townhouse development with a fee simple ownership of each unit. The development would have a density of 8.34 units per acre for a total of 504 units on the 60.5 usable acres of the property.

## ISSUES

1. Whether the Zoning Ordinance precludes townhouse usage.

2. Whether the Zoning Ordinance effectively precludes construction of townhouses which may be sold.

3. Whether the township fails to provide for a fair share of moderate income housing.

## DISCUSSION

### Issue 1.

According to appellant, "[a] thorough study of the Whitpain Township Zoning Ordinance as it prevailed on August 8, 1977, failed to indicate any zoning category wherein a townhouse in fee simple ownership could be constructed. Appellant notes that after the case of Henry A. Berger and Croxley Green Associates v. Board of Supervisors of Whitpain Township, 31 Pa. Commw. 386, 376 A. 2d 296 (1977), wherein the Honorable Richard S. Lowe found that the Whitpain Township Zoning Ordinance was defective in that it failed to provide townhouses which could be sold in fee simple, Whitpain Township endeavored to cure the defect by removing the specific exclusion of row houses from the definition of multi-family dwellings. At the time the Croxley Green Curative Amendment was filed, the Whitpain Township Zoning Ordi-

nance contained a definition of multiple dwelling which read as follows:

Article II, Section 200 5(c) Multiple Dwelling: A building not a single-family dwelling nor a two family dwelling, designed for and occupied exclusively for dwelling purposes by three or more families living independently of one another, not a row house, but customarily called an apartment house.

Subsequent to the filing of the Croxley Green Curative Amendment and before the filing of the subject curative amendment, the township amended Article II, Section 200 5(c) so that it now reads:

Article II, Section 200 5(c) Multi-Family Dwellings: Two-family dwellings and all other types of buildings, other than single family detached dwellings, designed for and occupied exclusively for dwelling purposes by two or more families living independently of one another.

It is appellant's contention that "[t]his amendment was a feeble attempt to cure a defective ordinance and certainly did not make any accomodation for the allowance of a townhouse development in fee simple ownership." (Appellant's Brief, p. 7). We disagree.

In Benham v. Board of Supervisors of Middletown Township, 22 Pa. Commw. 245, 349 A. 2d 484 (1975) the Commonwealth Court was faced with a zoning ordinance that specifically excluded row houses. However, the court noted that the Zoning Ordinance specifically permitted townhouses and held that there was no de jure exclusion. The court also held that there need not be a specific district set aside for townhouses: "Girsh only requires that a municipality make a

reasonable provision for a particular use." Benham, supra, at 487. Finally, the court noted that townhouses were deemed permitted in the definition of "multiple dwelling" which provides, "A building designed for and occupied exclusively as a residence for two or more families living independently of one another." Benham, supra, at 488, fn 5.

In another recent case, Fretz v. Hilltown Township Board of Supervisors, 43 Pa. Commw. 4 (1979) where the zoning ordinance provided for an M-F Residential District allowing, inter alia, a "multiple dwelling," without defining said phrase, the court ruled that "multiple dwelling" encompassed twin homes (the subject of the curative amendment) and all conventional forms of housing other than a single-family detached dwelling.

From the foregoing, it is clear that the Whitpain Township Zoning Ordinance's definition of "multi-family dwelling" includes townhouses and that no de jure exclusion exists. This is so by virtue of the definition's exclusion of single-family detached houses. Townhouses, which are single-family attached dwellings, are, therefore, permitted uses.

## Issue 2.

Nevertheless, appellant claims that the Whitpain Township Zoning Ordinance precludes townhouses from being sold in fee simple. We disagree.

Prior to Ordinance No. 4-49, adopted July 13, 1976, Section 551A(1) of the Zoning Ordinance prevented the sale of the individual townhouse units which comprise the multi-family dwelling building by requiring multi-family dwellings to "constitute a single operating or proprietary unit." This requirement, however, was repealed by Ordinance 4-49 so that as of the filing of the Application, Section 551A read:

*Permitted Uses*. The following are permitted in an R-3 Multi-family District:

1. Multi-family dwellings.

Thus, as of the effective date of Ordinance No. 4-49, i.e. July 13, 1976, and prior to the filing of this challenge on August 8, 1977, townhouses could be sold in fee simple. When the substantive challenge is made after the defect is cured, an attack on the prior allegedly defective ordinance cannot be made, nor can the attack on the corrected ordinance be sustained. Hammermill Paper Co. v. Greene Township, 39 Pa. Commw. 212, 395 A. 2d 618 (1970), Warminster Township v. Kessler, 16 Pa. Commw. 67, 329 A. 2d 316 (1974). Since the problems raised by the Croxley Green case were corrected over a year before the application was filed, we conclude that townhouses to be sold in fee simple, are permitted as a matter of right in the township.

Appellant argues that even if townhouses are legally permitted, the R-3 zoning regulations effectively preclude the development of townhouses, thereby working a de facto exclusion. Again, we disagree. The fact that there are 730 townhouse units in the township, either approved or constructed, in properties zoned R-3, demonstrates that this argument is without factual merit. Further, we note that such requirements that at least half of the units must have one bedroom, that parking be at least 50 feet from the property line, and that there be a 100 foot setback, which appellant claims "negate" townhouse development, have not prevented at least one other townhouse development from being successful.

Issue 3.

Finally, the township appears to have provided

for its "fair share" or regional housing despite appellant's argument to the contrary. This conclusion is supported by both the cases of Csink v. Whitpain Township, 106 Montg. Co. L.R. 409 (1979), and Whitpain-Stewart Associates Appeal, 105 Montg. Co. L.R. 87 (1978) and confirmed by the Montgomery County Planning Commission.

Whitpain Township provides, both in number of dwelling units and available land for development, more than its fair share of regional housing needs. The number of housing units in the township increased 40.3 percent between 1970 and 1975. Of all contiguous townships, Whitpain had the largest absolute number increase (965) of units during that time. Approximately 29 percent of all building permits issued by the township between 1950 and 1977 were for multi-family units. By the end of 1976, there were a total of 2,098 detached houses and 932 other types (twins, apartments, townhouses) in the township, so that 30.76 percent of all housing units were other than single family detached dwellings.

Furthermore, the township provides a generous portion of usable, developable land for multi-family dwellings. Seven developments have obtained approval for construction of multi-family dwellings, totalling 2,207 units, of which 1,293 are architecturally identified as "townhouses."

In Appeal of Silver, 35 Pa. Commw. 569, 387 A. 2d 169 (1978), the court declared constitutional an ordinance which provided 3.5 percent of the township's total acreage for multi-family dwellings. In comparison, Whitpain Township's R-3 zoning districts comprise 369.2 of the 7,183 township acres, or 4.5 percent of the township. Indeed, the R-3 districts represent 5.2 percent of the

total residentially zoned acres of the township and 6.1 percent of the net available residential acreage.

Based on the foregoing, we conclude that appellant has failed to establish the unconstitutionality of the Whitpain Township Zoning Ordinance.

## ORDER

And now, March 1, 1982, after argument before the court en banc and consideration of briefs, the Order of the Whitpain Township Zoning Hearing Board, dated March 20, 1980, is sustained, and the appeal of Helen L. Weiss, Bertha Tyson, and Donald Tufillaro is dismissed.