Peters Township *v*. Edward Dotter et al.   Edward Dotter and Barbara J. Dotter, his wife, Appellants.

Argued October 5, 1983, before Judges WILLIAMS, JR., MACPHAIL and BLATT, sitting as a panel of three.

*Thomas A. Berret,* with him *James R. Mall, Meyer, Unkovic & Scott,* for appellants.

*William A. Johnson, Wilson, Johnson & Sweat,* for appellee.

OPINION BY JUDGE BLATT, December 7, 1983:

This case comes here on appeal from a decision of the Court of Common Pleas of Washington County, which held that the appellants were in violation of a township Zoning Ordinance and Building Code.

The appellants own property in the township zoned R-1 Residential-Agricultural, on which they have erected and operated a small "personal care boarding home", housing eight elderly residents along with a full-time resident manager, his wife and their two children.[1] After receiving an adverse decision[2] from a township zoning officer, they appealed to the Township Zoning Board (Board) and sought a determination that their operation was permissible under either §201.14 or §803.41 of the Ordinance as a special exception, or that it should be allowed as a variance pursuant to §803.3 of the Ordinance, or, alternatively, that the Ordinance unconstitutionally excludes personal care boarding homes altogether. The Board denied all of the claims, and an appeal was then taken to the court of common pleas. At approximately the same time, the Board filed an equitable action to force the closing of the facility on the basis that its continued operation threatened the health, safety and welfare of the township residents, and a Township Code En-

---

[1] Testimony at trial indicated the following:

a) all the elderly residents are ambulatory and follow directions in the event of an emergency;

b) a doctors certificate, which is updated yearly certifies that each resident does *not* need skilled or intermediate nursing care;

c) the purpose of the home is to provide assistance in daily living activities;

d) the home is licensed by the Commonwealth, Dept. of Labor and Industry, as a small personal care boarding home.

[2] The record before us fails to indicate what claims were raised and decided before the Township Zoning Officer.

4

forcement Officer ordered the premises vacated immediately. All actions were consolidated by the court of common pleas, which took no new evidence, denied the special exceptions, the variance, and the constitutional challenge, and ordered that the boarders be removed from the premises. Exceptions were then filed which the court, *en banc*, dismissed, and the instant appeal ensued.

Where, as here, no new evidence is taken by the trial court, our scope of review is limited to determining whether or not the findings are supported by substantial evidence and whether or not an error of law or abuse of discretion was committed. *Hanlen v. State College Zoning Hearing Board*, 60 Pa. Commonwealth Ct. 190, 430 A.2d 1236 (1981).

The appellants claim that they should be granted a special exception pursuant to Section 201.14 of the Township Zoning Ordinance, which provides as follows:

*Uses by Special Exception*

The following uses may be permitted as a Special Exception by the Zoning Hearing Board in accordance with the procedure set forth in this Ordinance:

Semi-public community facilities, i.e., churches, private or parochial schools, colleges, nursing or convalescent homes (subject to Section 508 of this Ordinance), hospitals;

Section 106.2 of the ordinance, however, more explicitly defines such facilities as "Churches, Sunday schools, parsonages and other related functions, colleges, hospitals and other institutions of an educational, religious, charitable or philanthropic nature." And, in light of the fact that the boarders here were obligated to vacate the premises in the event that their

monthly rent went unpaid or if their health deteriorated to a point wthen they needed continued medical attention, we cannot say that the home was ''of an educational, religious, charitable or philanthropic nature'' or that there was any abuse of discretion or any error of law in the court's concluding that the home did not come within the definition of Section 106.2 and, consequently, could not be given a special exception under Section 201.14.

The appellants also contend that the trial court erred in denying them a special exception pursuant to Section 803.41 of the Ordinance, which provides as follows:

803.41 The Board shall hear requests, and grant or deny the following Special Exceptions:

(3) *Use Not Provided For*

Whenever in any district established under this Ordinance a use is neither specifically permitted or denied and an application is made by a property owner to the Zoning Officer for such use, the Zoning Officer shall refer the application to the Zoning Hearing Board which shall have the authority to permit or deny the use. The use may be permitted if it is similar to and compatible with permitted uses in the district, meets the standards and criteria set forth in Section 803.42 and in no way is in conflict with the general purpose and intent of this Ordinance.

803.42 [The Board shall be guided] [i]n accordance with the following standards and criteria:

(1) Determine that the proposed special exception will not substantially injure or detract from the use of neighboring property or from

the character of the neighborhood and that the use of property adjacent to the area included in the proposed change or plan, is adequately safeguarded.

(2) Determine that the proposed special exception will serve the best interests of Peters Township, the convenience of the community, and the public welfare.

(3) Consider the effect of the proposed special exception upon the logical efficient and economical extension of public services and facilities, such as public water, sewers, police and fire protection, and public schools.

The trial court concluded that the facility here concerned was profit-motivated and, therefore, analogous to a motel, hotel and other related facilities such as are permitted in the C-2 district, and therefore not within the ambit of Section 803.41 of the Ordinance. It also concluded that the continued use of the facility violated the standards of Section 803.42 of the Ordinance because it would attract vehicular activity and thereby create potential safety hazards, and our examination of the record persuades us that there was substantial evidence to support these findings.

A further argument of the appellants is that the trial court erred in denying a variance pursuant to Section 803.3 of the Ordinance, which provides as follows:

### 803.3 *Variances*

The Board shall hear requests for variances where it is alleged that the provisions of the zoning ordinance inflict unnecessary hardship upon the applicant. The Board may by rule prescribe the form of application and may require preliminary application to the zoning officer.

The Board may grant a variance provided the following findings are made where relevant in a given case:

(1) That there are unique physical circumstances or conditions, including irregularity, narrowness, or shallowness of lot size or shape, or exceptional topographical or other physical conditions peculiar to the particular property, and that the unnecessary hardship is due to such conditions, and not the circumstances or conditions generally created by the provisions of the zoning ordinance in the neighborhood or district in which the property is located.

(2) That because of such physical circumstances or conditions, there is no possibility that the property can be developed in strict conformity with the provisions of the zoning ordinance and that the authorization of a variance is therefore necessary to enable the reasonable use of the property.

(3) That such unnecessary hardship has not been created by the appellant. Financial hardship shall not be construed as the basis for granting a variance.

(4) That the variance, if authorized, will not alter the essential character of the neighborhood or district in which the property is located, nor substantially or permanently impair the appropriate use or development of adjacent property, nor be detrimental to the public welfare.

(5) That the variance, if authorized, will represent the minimum variance that will afford relief and will represent the least modification possible of the regulation in issue.

8

> In granting any variance, the board may attach such reasonable conditions and safeguards as it may deem necessary to implement the purposes of the laws of the Commonwealth and the Township zoning ordinance.

The appellants claim that these requirements inflict unnecessary hardship, are unduly restrictive, and are unjustified for police power purposes.

In order to establish entitlement to a variance, of course, an applicant must show (a) that the Ordinance, as it relates to the features of the land, uniquely burdens the property so that unnecessary hardship will result from a denial of the variance and (b) that the variance sought will not adversely affect public health, safety or welfare. *In Re: Appeal of Buckingham Developers, Inc.*, 61 Pa. Commonwealth Ct. 408, 433 A.2d 931 (1981). Here, however, the trial court found that no unnecessary hardship existed because the property is obviously suited to serve as a single family residential dwelling, which is precisely what it was used for prior to its present use. We find no error of law or any abuse of discretion in this conclusion, and there is substantial evidence to support it in the record. *Hanlen*.

As to their challenge of the Ordinance as unconstitutionally excluding small personal care boarding houses,[3] the appellants had the heavy burden of proving either a de jure exclusion, by showing that the Ordinance on its face bans such activity, or a de facto exclusion, by showing that the Ordinance effectively prohibits such activity, although on its face, the Ordi-

---

[3] The township contends that the appellants failed to raise this constitutional question and, therefore, violated the rule of *Borough of West Mifflin v. Zoning Hearing Board of the Borough of West Mifflin*, 69 Pa. Commonwealth Ct. 604, 452 A.2d 98 (1982). Because both the trial court and, arguably, the Board addressed this issue, we will likewise do so.

9

nance appears to permit the use. *Benham v. Board of Supervisors of Middletown Township*, 22 Pa. Commonwealth Ct. 245, 349 A.2d 484 (1975). Yet, in *Christ United Methodist Church v. Municipality of Bethel Park*, 58 Pa. Commonwealth Ct. 610, 428 A.2d 745 (1981), we held that there is no de jure exclusion so long as the Ordinance is ". . . sufficiently broad to encompass the use proposed . . ." *Id.* at 615, 428 A.2d at 747. And, in the areas zoned C-2 in this township, operation of hotels and motels is permitted, with Section 106.2 of the Ordinance defining such use as follows:

> *Motel (Hotel)*—A building or a group of buildings, having units containing sleeping accommodations which are available for a temporary rental occupancy by transients and providing sufficient off-street parking facilities adjacent or convenient thereto. A tourist home containing provisions or facilities for accommodation of more than two transient occupants not normally quartered on the premises shall be considered as a Motel (hotel) facility under the provisions of this ordinance.

We believe, as did the trial court, that this definition is sufficiently broad to encompass the activity here concerned and that there was no de jure exclusion. As to a de facto exclusion, the appellants cite *Christ United Methodist Church* and liken their use to a "nursing home",[4] arguing, as was argued in *Christ United Methodist Church,* that the minimum acreage requirements of the Ordinance preclude their particular activity. Their reliance on *Christ United Methodist Church,* however, is misplaced. Sections 201.21(b) and

[4] It is interesting to note that in response to another issue, the Dotters admitted that the boarding home was *unlike* a nursing home because neither full-time nurses nor professional personnel were on duty.

10

508 of the Ordinance require a total acreage of at least one acre; whereas, in *Christ United Methodist Church* the minimum acreage requirement was five acres. There, the court concluded that a five acre requirement for a group home housing eight male juveniles, two housekeepers and a limited support staff was larger than *necessary*. *Christ United Methodist Church* at 617, 428 A.2d at 748. It also held that the constitutionality of minimum lot size requirements must be determined on a case-by-case basis. *Id.* at 616, 428 A.2d at 747. After a careful review of this record, however, we cannot conclude that the one-acre requirement here was larger than is necessary, so we can find no de facto exclusion.

Finally, the appellants argue that the trial court erred in upholding the application of a provision of the township's building and fire code. They contend that they have complied with the state regulations presented in 34 Pa. Code §37.801, and have thereby met their full legal duty. We must agree with the trial court, however, that §37.3[5] of the Code enables any municipality desiring to do so to create more stringent regulations for fire protection than are provided in the Code, and that is precisely what occurred here.

We will, therefore, affirm the order of the court below.

## ORDER

AND Now, this 7th day of December, 1983, the order of the Court of Common Pleas of Washington County in the above-captioned matter is hereby affirmed.

---

[5] 34 Pa. Code §37.3 provides as follows:

Unless otherwise specified in the respective subchapter, the provisions of this chapter apply to every building within the Commonwealth except cities of the first class, second class and second class A as enumerated in section 2 of act of April 27, 1927. . . . These rules shall be understood not to limit the power of cities, towns, and villages to make or enforce additional or more stringent regulations.