In Re: Appeal of Elocin, Inc. From the Denial of Its Challenges To the Validity of The Zoning Ordinance and Map of Springfield Township etc. Elocin, Inc. and Claude deBotton, Appellants.

Argued November 17, 1981, before President Judge CRUMLISH, JR. and Judges MENCER, ROGERS, CRAIG and MACPHAIL.

James D. Crawford, with him Richard D. Birns, and Michael Sklaroff, Schnader, Harrison, Segal & Lewis, and Vincent J. LaBrasca, Fronefield & deFuria, for appellants.

Jan Z. Krasnowiecki, with him Harry J. Bradley, for appellees, Springfield Township and its Board of Commissioners.

Lloyd R. Ziff, with him M. Duncan Grant, Pepper, Hamilton & Scheetz, and Richard L. Hughey, Anderman, Hughey & Flick, for appellees, Margaret Morrow Cox Ziff, Lloyd R. Ziff and George W. Belk, III.

OPINION BY JUDGE MACPHAIL, April 8, 1982:

This case comes to us on appeal from a decision of the Court of Common Pleas of Delaware County which upheld the denial of Appellant Elocin, Inc.'s (Elocin) curative amendment request[1] by the Board of Commissioners (Board) of Springfield Township (Springfield Township or Township). The crux of Elocin's challenge to the Township's zoning ordinance is its belief that the Township has failed to provide for its "fair share" of the region's need for multi-family dwellings, specifically apartments and townhouses.

Elocin owns a 63.7 acre tract of land in the Township.[2] Elocin acquired title to this land no later than 1970. The land is presently zoned "A Residence" which permits development of single family detached

---

[1] This substantive challenge to the Township's zoning ordinance was brought pursuant to Sections 609.1 and 1004 of the Pennsylvania Municipalities Planning Code, Act of July 31, 1968, P.L. 805, as amended, 53 P.S. §§10609.1, 11104.

[2] The land is referred to in the briefs and records as the "Borgh Tract."

dwellings on lots of 8500 square feet. The lot is rugged in nature, consisting of a small creek running through the site and slopes in excess of 15% covering portions of the land. No development presently exists on the tract.

On January 9, 1976, Elocin filed two curative amendment applications with the Board, challenging the substantive validity of the zoning ordinance for its failure to provide, or at best token provision, for apartment and townhouse development. Elocin's development plan, as amended in two March 5, 1976 submissions to the Board, proposed construction of 567 apartment units in six story high structures and 305 townhouse units in a variety of clusters. Notices of the planned hearings were published and in response thereto a variety of persons and groups, including Appellees Margaret Ziff, Lloyd Ziff and George Belk, III (Intervenors) sought and were granted party status for the hearings. After thirty-eight public hearings were held to consider Elocin's challenges and proposed curative amendments, the Board rejected the challenges on November 9, 1978 in a fifty-five page opinion which included findings of fact and conclusions of law. Elocin appealed this decision to the Delaware County Court of Common Pleas which took no further evidence.[3] The court below affirmed the decision of the Board and Elocin then perfected its appeal to this Court.

Our Supreme Court, in *Surrick v. Zoning Hearing Board of Upper Providence Township*, 476 Pa. 182, 382 A.2d 105 (1977), developed an analytical method

---

[3] As the lower court took no additional evidence, we shall confine our review to a determination of whether the Board abused its discretion, committed an error of law, or made findings of fact not supported by substantial evidence. *Lower Gwynedd Township v. Provincial Investment Co.*, 39 Pa. Commonwealth Ct. 546, 549, 395 A.2d 1055, 1056 (1979).

to be used by courts in the future to aid them in their review of zoning ordinances which are alleged to be exclusionary. In analyzing a case by this method, the reviewing court uses the facts of the case to answer inquiries focused on various factors which have previously been held to be relevant in determining whether a zoning ordinance effects an unconstitutional exclusion of a particular land use. The answers derived from these inquires are then weighed by the review court on a case by case analysis to determine the ordinance's validity.

The first question for our consideration is whether the Township is a logical area for development and population growth. "The community's proximity to a large metropolis and the community's and region's projected population growth figures are factors which courts have considered in answering this inquiry." *Surrick*, 476 Pa. at 192, 382 A.2d at 110.

The Township is located 5.2 miles from Philadelphia. Two major regional arteries and a commuter rail link pass through it. The Township is located adjacent to Upper Providence Township and Nether Providence Township, two communities which previously have been determined to be in the path of future growth. *See Surrick; Girsh Appeal*, 437 Pa. 237, 263 A.2d 395 (1970). We believe the Township is a logical area for development and population growth.[4]

The next question we must consider is the present level of development within the community. Under this

---

[4] The Board and the lower court both found the Township not to be a logical area for population growth and development. However, this was based on their inclusion of the present level of community development into this initial inquiry. The Supreme Court in *Surrick* noted that analytically the question of development could be included at this stage, but that for the sake of simplicity it would be considered a separate analytical step. *Surrick*, 476 Pa. at 192 n. 9, 382 A.2d at 110 n. 9. We shall also treat present level of development as a separate step.

inquiry, the Supreme Court suggests that we consider facts such as population density data, percentage of total undeveloped land and the percentage of land available for the development of the desired multi-family dwellings. At this point we come to what the Township asserts as the key issue in the case, the primary basis for both the Board's and the lower court's decision. That question is whether the Township has reached such a developed state that it is not subject to the "fair share" test.

The Board's finding of fact on the present matter is that the Township has 160 vacant acres out of its approximate total of 4000 total acres. Thus, only 4% of the total Township land is vacant. With 96% of its land presently subject to some use, the Township argues it has reached such a highly developed stage that it should not be forced to accept unsuitable development upon the few vacant parcels still remaining. The Township, in particular support for this contention, cites to us *Pascack Association Ltd. v. Mayor of the Township of Washington,* 74 N.J. 470, 379 A.2d 6 (1977), in which the New Jersey Supreme Court held that a municipality with only 2.3% of its land vacant was developed and therefore not bound to provide for multi-family dwellings.

Of course, New Jersey's decision as to what constitutes a "developed" community is not conclusive upon this Court. And for various reasons we feel it is not persuasive. New Jersey considers the motive behind a zoning plan in determining whether there has been exclusionary zoning, *see Pascack,* 74 N.J. at , 379 A.2d at 18-19 (SCHREIBER, J., concurring); exclusionary intent is not an essential element in proving an ordinance unconstitutionally exclusionary in Pennsylvania. *Surrick,* 476 Pa. at 193, 382 A.2d at 111 n. 11; *Waynesboro Corp. v. Easttown Township Zoning Board,* 23 Pa. Commonwealth Ct. 137, 143, 350 A.2d

895, 898 (1976). Furthermore, New Jersey has not embraced the general principle that a municipality must provide for every residential use somewhere. *See Fanale v. Hasbrouck Heights,* 26 N.J. 320, 325, 139 A.2d 749, 752 (1958). In Pennsylvania, however, an "ordinance which fails entirely to provide for a needed and desired kind of residential use is exclusionary and as a consequence unconstitutional." *Berger v. Board of Supervisors of Whitpain Township,* 31 Pa. Commonwealth Ct. 386, 390, 376 A.2d 296, 298 (1977). The New Jersey Supreme Court also seems to have considered the utility of the tract of land at issue in *Pascack* in deciding not to apply a "fair share" analysis, 74 N.J. at , 379 A.2d at 15. Our courts do not consider suitability of a particular site as relevant to the issue of substantive validity, however. *See Fox Chapel Borough Appeal,* 33 Pa. Commonwealth Ct. 256, 261, 381 A.2d 504, 507 (1978). Finally, New Jersey apparently intends to restrict the concept of "developing communities" to municipalities of sizeable land area (with reference to its decision in *South Burlington County NAACP v. Township of Mt. Laurel,* 67 N.J. 151, 336 A.2d 713 (1975), *cert. den. and appeal dismissed,* 423 U.S. 808 (1975), where the municipality at issue was over 15,000 acres large). Pennsylvania has not restricted the "fair share" analysis to only large scale municipalities. (Upper Providence Township was only a 3800 acre municipality. *Surrick,* 476 at 187, 382 A.2d at 107).

With *Pascack* not providing any guidance to us on the question, we are still left with determining whether Springfield Township has reached such a stage of high development that it is not subject to an exclusionary zoning challenge.[5] We note initially that this Court, in

---

[5] In a concurrence to *Pascack,* Justice SCHREIBER questioned the equitability of any differentiation in the constitutional duties of fully developed versus developing communities in regards to fair

*Silver Appeal*, 35 Pa. Commonwealth Ct. 569, 387 A.2d 169 (1978), in applying the *Surrick* criteria on this question, used 100% as the point of development capacity. With 160 acres zoned for development remaining, the Township certainly has not reached this point. Further, in this approximately 4000 acre Township, only 29 acres, or approximately .73% is zoned for multi-family use, roughly all of which is presently subject to apartment use. No area is presently zoned for townhouse usage.[6] Minimum lot sizes for single family dwellings is a comparatively dense one-fifth acre, however.

On these facts alone, the question of whether this is a developed or developing community is admittedly close, but one additional factor leads us to conclude that Springfield is a developing community and should not now be free of a fair share analysis. In the 1930's and 1940's, the Township had zoned up to 5.3% of its lands for multi-family uses. But as the population increased, Springfield undertook greater and greater restrictions upon types of uses in the district. By the end of the 1960's density restrictions were placed upon apartment use,[7] townhouses ceased to be a permitted use and the apartment district was reduced to its present 29 acres. The result was a zoning plan that patterned the actual use of land, with any remaining va-

share zoning: "[T]he courts should not absolve [a] municipality from its underlying duty simply because it has already completed its illegal objective." 74 N.J. at    , 379 A.2d at 18 (SCHREIBER, J., concurring). *See Pascack*, 74 N.J. at    , 379 A.2d at 19-31 (PASHMAN, J., dissenting).

[6] The Board held that the 524 twin home units should be considered as townhouses. However, these twins exist as nonconforming uses in the Township, not as a matter of right. Their existence, therefore, would not cure any defect in the ordinance. *Lower Gwynedd Township*, 39 Pa. Commonwealth Ct. at 550, 395 A.2d at 1057.

[7] This will be discussed in greater detail later. See note 11 *infra*.

cant land zoned for single family residential use. The Board viewed these actions as "recognition of the need for careful planning . . . in order to prevent uncontrolled and possibly injurious development." The Board saw the current zoning as reflecting "the concern regarding the overburdening of municipal services which are themselves fully developed."

Whatever the motive may have been for these zoning changes, their effect is clear: Springfield has locked itself into its level of development of the past. The Township's population, present and future, is restricted by the ordinance to present uses, and single family dwellings for the remaining vacant lots. This is exactly what the Supreme Court sought to prevent in the landmark case of *Girsh Appeal:* "[A] Township may not choose to only take as many people as can live in single family housing, in effect freezing the population at near present levels." 437 Pa. at 244, 263 A.2d at 399. This intention to prevent communities from locking in their population levels was presaged in *National Land and Investment Co. v. Easttown Township Board of Adjustment,* 419 Pa. 504, 215 A.2d 597 (1965) when our Supreme Court stated that "[a] zoning ordinance whose primary purpose is to prevent the entrance of newcomers in order to avoid future burdens, economic and otherwise, upon the administration of public services and facilities cannot be held valid." 419 Pa. at 532, 215 A.2d at 612.

The Township directs our attention to our decision in *Kaiserman v. Springfield Township,* 22 Pa. Commonwealth Ct. 287, 348 A.2d 467 (1975),[8] and argues that *Kaiserman* supports a view that a community which has historically been lenient in the past in regards to its zoning should not be judged exclusionary at the present time. *Kaiserman* is easily distinguished

---

[8] Involving Springfield Township, *Montgomery* County.

from the present situation, however. In *Kaiserman*, 408 acres were zoned for apartment usage, but only .6% of the Township's roughly 4000 acres were actually developed for multi-family use. We properly determined that the realities of development would not make a zoning plan exclusionary where 408 acres were still theoretically available for apartment usage. In the present case however, the Township's previous zoning of 5.3% of its land for apartments *has been changed,* to reflect the realities of development, to .73% of its land. The chance for developers "to assemble already developed land" to put up new apartments, *Kaiserman,* 22 Pa. Commonwealth Ct. at 293, 348 A.2d at 470, does not exist in this case. *See Benham v. Board of Supervisors of Middletown Township,* 22 Pa. Commonwealth Ct. 245, 349 A.2d 484 (1975).

Because we conclude that Springfield is a developing community, we believe it would be improper to end our analysis of Springfield's zoning ordinance under a standard of "full development." We shall therefore proceed on to the third step of the *Surrick* analysis, a determination of the extent of exclusion.

Two distinct challenges have been raised against this ordinance: one for townhouses and the other for apartments. In view of the fact that townhouses and apartments are distinct uses, each deserving of separate recognition, *Camp Hill Development Co. v. Zoning Board of Adjustment, Borough of Dauphin,* 13 Pa. Commonwealth Ct. 519, 319 A.2d 197 (1974), we shall analyze the exclusion, if any, of these uses separately.

Townhouses are clearly not a use permitted as of right anywhere in the community at the present time. The Township argues that the 524 twin homes which exist in the community should be considered as townhouses since, in the 1950's, they served the same need as townhouses. However, as was previously discussed in note 6, *supra,* these twin homes exist in the Town-

ship as nonconforming uses,[9] and therefore would not serve to cure the defect in the ordinance in failing to provide the use as a matter of right.[10] Thus, we find the ordinance to be exclusionary in regard to townhouses.

We now move to an examination of the extent of the apartment exclusion. Elocin initially claims that apartments are entirely excluded, as the ordinance restrictions on height (two stories) and number of units per building (four) result in the construction of "quadruplexes," not apartments. Elocin cites for this proposition *Westrum Enterprises v. Board of Commissioners of Upper Dublin Township*, 21 Pa. Commonwealth Ct. 51, 343 A.2d 685 (1975). However, the "quadruplexes" of *Westrum Enterprises* were buildings "containing four dwelling units, with each unit sharing one sidewall and one rear wall with another unit." Such a structure seems to closely approximate the "fourplex" which we quite recently held to be a townhouse usage in *Kaufman and Broad, Inc. v. Board of Supervisors, West Whiteland Township*, 65 Pa. Commonwealth Ct. 469, 442 A.2d 1220 (1982). The permitted structures in this Township are clearly not like the "quadruplexes" in *Westrum Enterprises·* They are apartments and thus apartments clearly are permitted in the Township.[11] Therefore, the only question

---

[9] While twins are a recognized use in the Township ordinance's C residential district, no C district exists on the present zone map.

[10] Furthermore, the relevant question in this inquiry is whether twin homes serve the townhouse market today, not whether they served the same need over twenty years ago. While we do not believe that twins do serve the same market, we need not answer this question since twins are not permitted as of right.

[11] Therefore, to the extent that Elocin challenges the ordinance as excluding midrise apartments, under Elocin's definition of what is a "true" apartment building, we find the challenge meritless. *See Board of Supervisors v. Gentsch*, 51 Pa. Commonwealth Ct. 455, 414

for our purposes is whether the amount of land for these apartments is reasonable.

Again, we consider the facts: 29 acres of land are zoned for apartment usage, which is .73% of the Township land. This land is already filled with apartment buildings and under the present density restrictions very few additional units could be added to these lands through redevelopment. Only 5% of the present housing stock of the Township is composed of apartment units and said percentage can only decrease under the present ordinance. Population growth was approximately 8% during the 1960's.[12] We do not believe such percentages reflect a reasonable appropriation of land for apartments and, therefore, hold that Springfield has failed to provide a "fair share" of its land for apartment use.

Before discussing the appropriate remedy in this matter, several issues raised by the Intervenors must first be disposed of. The first issue raised by the Intervenors is their contention that Section 908(8) of the Pennsylvania Municipalities Planning Code (MPC), 53 P.S. §10908(8), deprives them of their federal constitutional rights of free speech, right to petition the government for redress of grievances, and equal protection, as well as impinging on their legislators' rights to hear their constituents, through its prohibition of ex parte communication by parties to Board members after the commencement of the hearing process. We find such a challenge to be without merit.[13]

---

A.2d 1102 (1980). No challenge was made as to the *reasonableness* of these height and unit density restrictions, *see Gentsch*, as the challenge was framed in reference to the *exclusion* of apartments.

[12] An increase of 2273 persons, with a total population of 29,000 by 1970.

[13] Such a challenge is also irrelevant to the disposition of the present case, since the MPC is only the chosen procedural device for raising Elocin's constitutional challenge to the substantive validity

Intervenors also challenge Elocin's right to raise the constitutional validity of this ordinance in view of the nine years which elapsed between Elocin's purchase of the property and its filing of its curative amendment requests. Intervenors argue that nearby landowners have relied on the existing ordinance as applied to the Borgh tract and therefore that Elocin should be considered to have waived its right to challenge. We again find this challenge to be meritless. Section 1004(2)(b) of the MPC, 53 P.S. §11004(2)(b) specifically provides that a curative amendment "request may be submitted *at any time* after the ordinance or map takes effect. . . ." Furthermore, we fail to see how any Township resident can claim any right to rely upon an ordinance determined to be invalid.

Having determined that the Township zoning ordinance is exclusionary, we now come to the question of relief in regard to Elocin's usage of its tract of land. The trial court, since it found the ordinance to be nonexclusionary, did not address the reasonableness of Elocin's plan. Section 1011(2) of the MPC, 53 P.S. §11011(2), however, provides for consideration by the court of the proposed plans, existing restrictions, and the locational suitability of the site in question, and also provides for further hearings if necessary to determine the proper relief. Accordingly, we shall remand this matter to the Court of Common Pleas with orders to examine this proposal in light of Section 1011, keeping also in mind the standards we set down in *Ellick v. Board of Supervisors of Worcester Township*, 17 Pa. Commonwealth Ct. 404, 333 A.2d 239 (1975) for the approval of development plans. The lower court may consider at that time the merit, if any, to Intervenors' challenge to these plans based on Ar-

---

of this ordinance. Even if ex parte communication were permitted with Board members, it would have no effect on the *legal* determination by this Court of the ordinance's validity.

ticle I §27 of the Pennsylvania Constitution of 1968. *See Berger v. Board of Supervisors of Whitpain Township,* 31 Pa. Commonwealth Ct. at 396, 376 A.2d at 301.

### ORDER

AND Now, this 8th day of April, 1982, the order of the Court of Common Pleas of Delaware County in the above captioned matter is hereby reversed and the case is remanded to that Court for disposition in accordance with this opinion.

Judge ROGERS dissents.

Judge PALLADINO did not participate in the decision in this case.