Township of Paradise *v.* Mt. Airy Lodge, Inc. et al.
Mt. Airy Lodge, Inc., Appellant.

Argued June 8, 1982, before President Judge CRUMLISH and Judges ROGERS, BLATT, CRAIG and MAC-PHAIL.

*Robert S. Bennett, Jr., Trevaskis, Calhoun, Slama & Bennett,* for appellant.

*Richard E. Deetz,* with him *George Royal IV,* for appellee.

Opinion by Judge Craig, September 1, 1982:

Pursuing its challenge that zoning is exclusionary, Mt. Airy Lodge appeals an order of the Court of Common Pleas of Monroe County, which affirmed the decision of the Zoning Hearing Board of Paradise Township denying Mt. Airy's appeal[1] from a cease-and-desist order, issued under the township's zoning ordinance, that Mt. Airy cease excavation of shale from its property,[2] and which also enjoined Mt. Airy from such shale excavation.

In particular, Mr. Airy asserts that the township's zoning ordinance, which does not provide for an industrial zone, is exclusionary because it expressly prohibits commercial shale excavation under Section 3.5.5, which provides:

Section 3.5 *Prohibited Uses in all Districts*

The following uses are expressly prohibited in any Zoning District:

. . . .

---

[1] Mt. Airy appealed the cease and desist order by challenging the validity of the township's zoning ordinance under §§910 and 1004(1)(a) of the Pennsylvania Municipalities Planning Code, Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §10910 and §11004 (1)(a).

[2] Mt. Airy owns property known as the Simpson Farm. There are three separate shale excavation areas on the Simpson Farm. Shale pit No. 1 is approximately 300 feet by 300 feet in size with a sheer wall on the westerly side, approximately 20 feet in height, and is filled with water; shale pit No. 2, located approximately 900 feet southwesterly of shale pit No. 1, is approximately 500 feet in width and 400 feet in depth and approximately 50 feet in height with a sloping contour. Shale pit No. 3, located approximately 150 feet from the top of shale pit No. 2, is approximately 150 feet long, 50 feet in width, and has a depth of approximately 8 feet, and has been abandoned. Thus shale pit No. 2 presently is the only active excavation. Board's Findings of Fact Nos. 8-11.

3.5.5 Sandpits, gravel pits, peat bogs, and the extraction or removal of any natural resource from the land for the express purpose of commercial gain or profit. The excavation, extraction or removal of any natural resources from the land for any purpose other than for commercial gain or profit may be permitted for a temporary period upon the issuance of a special permit by the Township Supervisors.

The township has sought to justify that explicit total exclusion by pointing to two quarries within the township now operating as nonconforming uses,[3] and arguing that the prohibition, in the context of those nonconforming uses, bears a substantial relationship to the township's public health, safety, morals and general welfare, including the preservation of the rural-recreational environment that forms the basis of the township's tourist industry.[4]

Of course, where, as here, the common pleas court took no additional evidence,[5] our scope of review is limited to determining whether the zoning board committed a manifest abuse of discretion or an error of law. *General Battery Corp. v. Alsace Township*, 29 Pa. Commonwealth Ct. 498, 371 A.2d 1030 (1977). The question confronting us is whether the board committed an error of law by upholding the validity

---

[3] Although there are eight shale excavation sites in Paradise Township, only two are active and they have substantially larger areas than the excavation sites on Mt. Airy's property. Board's Findings of Fact Nos. 31 and 47.

[4] The township has an area of 13,632 acres and a population of 1,577 as of 1976. Its largest developed land use is resorts and recreational use, which involves 18.8% of all land area in the township.

[5] Here, the parties agreed that the equity action and the zoning appeal should be consolidated in the trial before the common pleas court, and that the testimony presented before the board would serve as evidence for the court.

of the township's zoning ordinance. We hold that error was committed.

In exclusionary zoning cases generally, the analytical approach involves determining:

1. Does the ordinance expressly exclude the use entirely from the municipality, or, if it allows the use to some extent, is it nevertheless exclusionary because it allows less than a "fair share?"

2. Is the exclusion prima facie valid because the use is objectionable by nature?

3. If the use is not an objectionable type, has the municipality initially shown justification for the exclusion?

### 1. Exclusionary Effect

This township's ordinance flatly excludes all extraction and therefore is exclusionary as to the requested shale removal use.

Although the township has used the phrase "fair share," that standard, enunciated in *Township of Willistown v. Chesterdale Farms, Inc.*, 462 Pa. 445, 341 A.2d 466 (1975), is involved only where a partial exclusion amounts to mere tokenism; as stated in *Surrick v. Zoning Hearing Board of Upper Providence Township*, 476 Pa. 182, 194, 382 A.2d 105, 111 (1977), "[w]here the amount of land zoned as being available [for the use] is disproportionately small . . ., the ordinance will be held to be exclusionary."

With the present exclusion being total, we do not talk about "fair share." Therefore, the discussion of the effect of nonconforming uses in Ryan, Pennsylvania Zoning Law and Practice, §3.5.5 (Rev. ed. 1979), cited by the township, is inapplicable; we consider below the existence of nonconforming uses as a factual element in deciding if the exclusion is justified.

## 2. Nature of the Excluded Use as Objectionable or Not

In *Beaver Gasoline Co. v. Osborne Borough,* 445 Pa. 571, 285 A.2d 501 (1971), the court set forth certain attributes which would characterize a land use as so undesirable that a total prohibition would be prima facie justified, saying:

> Common knowledge indicates that certain types of business activities, by reason of the particularly objectionable quality of those activities, are undesirable land uses and total prohibition would appear prima facie to be designed to protect those public interests which zoning statutes permit municipalities to protect. . . . Were this ordinance to ban from the borough an activity generally known to give off noxious odors, disturb the tranquility of a large area by making loud noises, have the obvious potential of poisoning the air or the water of the area, or similarly have cleared deleterious effects upon the general public, the situation would be entirely different from that in the instant case.

*Id.* at 575-76, 285 A.2d at 504.

Thus, *Beaver* provides that a municipality need not make provision for every kind of use. *Appeal of Green and White Copter, Inc.,* 25 Pa. Commonwealth Ct. 445, 450, 360 A.2d 283, 285.[6] However, in *Armi-*

---

[6] In *Green and White Copter,* we said that heliports, particularly in residential areas, embody a land use, the total exclusion of which appears prima facie to be designed to protect the public interest. Subsequently, in *Bluebell Assoc. v. Township Engineer for Whitpain Township,* 45 Pa. Commonwealth Ct. 599, 609, 405 A.2d 1070, 1074 (1979), we said that, "in a residential township of this nature, zoning provisions permitting airports may be omitted without placing upon the municipality the burden of demonstrating a justification. . . ."

*tage Appeal,* 39 Pa. Commonwealth Ct. 411, 395 A.2d 678 (1978), we held that a zoning ordinance which totally excluded mining as a permitted use did not appear prima facie to be designed to protect those public interests which zoning statutes permit municipalities to protect.[7]

The legitimacy, or non-objectionable nature, of quarrying as such was discussed in *Exton Quarries, Inc. v. Zoning Board of Adjustment,* 425 Pa. 43, 59-60, 228 A.2d 169, 179 (1967), where our Supreme Court said:

> The constitutionality of zoning ordinances which totally prohibit legitimate businesses such as quarrying from an entire community should be regarded with particular circumspection; for unlike the constitutionality of most restrictions on property rights imposed by other ordinances, the constitutionality of total prohibitions of legitimate businesses cannot be premised on the fundamental reasonableness of allocating to each type of activity a particular location in the community. . . [Thus] we believe that a zoning ordinance which totally excludes a particular business for an entire mu-

---

[7] In *Armitage,* we noted that we would be hard-pressed to declare mining an illegitimate business activity in Pennsylvania. Furthermore, we emphasized the regulatory role in which the Commonwealth partakes in overseeing mining operations. *See also General Battery,* 29 Pa. Commonwealth Ct. at 502, 371 A.2d at 1032. In Pennsylvania, the zoning of mining operations takes on added significance when one considers that Pennsylvania recognizes three estates in land, namely, coal, surface, and the right to support, and these may be vested in different persons at the same time. *Commonwealth v. Fitzmartin,* 376 Pa. 390, 102 A.2d 893 (1954); *Smith v. Glenn Alden Coal Co.,* 347 Pa. 290, 32 A.2d 227 (1943). Thus a municipality-wide exclusion of mining may deprive an estate owner any access to his property. *Cf. Mutual Supply Co. Appeal,* 366 Pa. 424, 77 A.2d 612 (1951).

nicipality must bear a more substantial relationship to the public health, safety, morals and general welfare than an ordinance which merely confines that business to a certain area in the municipality.

Hence the present exclusion is not prima facie valid, so that justification for the exclusion becomes the pivotal question.

### 3. JUSTIFICATION

In *Beaver*, 445 Pa. at 576, 285 A.2d at 504, the Supreme Court articulated a principle beyond the presumption in favor of the validity of ordinances, by explaining:

We believe that at least in those circumstances where a total municipality-wide prohibition of an activity which, on its face, does not give rise to an indication of the protection of a legitimate public interest controllable by zoning laws, the applicant has met his burden by showing the total prohibition and the municipality must then establish the legitimacy of the prohibition by evidence establishing what public interest is sought to be protected.

Therefore, to use the same terms as they employed by the Supreme Court in its statement of the precise question which was decided in *Beaver*, 445 Pa. at 574, 285 A.2d at 503, the township here must "bear the *initial burden* of demonstrating the constitutionality of a zoning ordinance which completely prohibits an otherwise legitimate business operation in the municipality." (Emphasis added) Although no majority opinion of the Supreme Court has yet confirmed the *Beaver* concurring opinion view[8] that the "initial bur-

---

[8] The party "saddled with the risk of nonpersuasion or burden of persuasion remains under its weight throughout the proceedings as a matter of law, IX Wigmore on Evidence, §2489 at 285 (3d Ed.

den,'' precisely speaking, is the duty of going forward with evidence rather than a shift of the persuasion burden, the distinction is not crucial here because we perceive that the township's factual situation has prevented its case from surmounting even the lesser hurdle.

The township's emphasis upon the nonconforming shale quarry uses does not lower that hurdle.[9] Although we recognize that nonconforming uses may constitute an element in a total environmental picture justifying an exclusion,[10] no finding here by the board

1940), and will not prevail in case of doubt. On the other hand, the burden of producing evidence often shifts throughout the proceedings. When we couple these concepts with the presumption of validity of a zoning ordinance, the framework of our case law . . . becomes apparent: (1) the party attacking the constitutionality of a zoning ordinance must always bear the risk of non-persuasion; (2) reflecting the normal situation where the same party must initially bear both the persuasion burden and the production burden, the party attacking the constitutionality of most zoning ordinances must initially face both burdens; and (3) when dealing with certain suspect classifications such as exclusionary zoning, the burden of producing evidence is first placed on the municipality." *Beaver Gasoline Co. v. Zoning Hearing Board. Id.* at 578-79, 285 A.2d at 505 (JONES, J., concurring).

[9] Nonconforming uses do not exist as a matter of right, *see Hanna v. Board of Adjustment*, 408 Pa. 306, 312, 183 A.2d 539, 543 (1962), and therefore cannot be used by a municipality to shift its "initial burden" after an applicant has established that a total prohibition exists on the face of the ordinance. *Dublin Properties v. Board of Commissioners*, 21 Pa. Commonwealth Ct. 54, 59, 342 A.2d 821, 823 (1975) ("[T]he fact that the Township has permitted townhouse development, however, does not cure the defect in the ordinance, *i.e.*, the failure to provide for townhouse development as a matter of right.") ; *see also Appeal of Elocin, Inc.*, 66 Pa. Commonwealth Ct. 28, 34, n. 6, 443 A.2d 1333, 1337 (1982).

[10] As stated in *National Land and Investment Co. v. Easttown Township Board of Adjustment*, 419 Pa. 504, 523, 215 A.2d 597, 607-8 (1965), "[e]very zoning case involves a different set of facts and circumstances in light of which the constitutionality of a zoning ordinance must be tested,"

(or the court) accords to the two active quarries such significance as would cause any additional quarries to have "final straw" impact.

The township has also emphasized the undesirability of the shale excavation site on Mt. Airy's property. We are mindful that even if a possibility exists that Mt. Airy's activity "may have some detrimental effects, this does not justify total exclusion of all mining facilities." *Armitage Appeal*, 39 Pa. Commonwealth Ct. at 415, 395 A.2d at 680.

The township asserts that the exclusion protects the natural attributes of the township which form a basis for the area's overall tourist industry and provide a recreational resource outlet for regional and local people. Ironically, Mt. Airy runs the largest resort in the township, and 95% of the shale it extracts has been for Mt. Airy's own use.[11] Furthermore, the board found that Mt. Airy intends to restore the shale pit after excavation is complete.[12]

Nevertheless, that the board found generally that the permanent establishment of shale pits in the township would have a negative impact on tourism and upon the resort environment.[13] However, this general finding, especially in the context of the board's specific findings, cannot be said to bear a "sufficiently substantial relationship to the public health, safety, morals and general welfare to justify its prohibition." *Exton Quarries*, 425 Pa. 63, 228 A.2d at 181.

The township also emphasizes the safety hazard presented by the use of Red Rock Road, a state road off which is located Mt. Airy's excavation site. The

---

[11] Board's Finding of Fact No. 48.

[12] Board's Finding of Fact No. 38.

[13] Board's Finding of Fact No. 122.

board found that the use of Red Rock Road by heavy trucks presents a safety hazard because of the narrow width, the lack of sight distances, the steep grades and the winding roads.[14] The inadequacy of particular roads must be considered in view of our Supreme Court's recognition, in *National Land and Investment Co. v. Easttown Township Board of Adjustment,* 419 Pa. 504, 528, 215 A.2d 597, 610 (1965), that although roads may become "increasingly inadequate as time goes by and that improvements and additions will eventually have to be made. Zoning provisions may not be used, however, to avoid the increased responsibilities and economic burdens which time and natural growth invariably bring." Furthermore, notwithstanding the safety problems of Red Rock Road, the township in its brief, acknowledges that the existing shale pits which make use of Red Rock Road are located considerably closer to Pennsylvania Route 940, which is a state road of higher quality than Red Rock Road. Thus the township concedes that viable and safe roads exist for the excavation of shale somewhere in the township. Therefore, an entire exclusion cannot be supported on this basis.

Furthermore, the town's assertion that the noise and vibrations from the blasting associated with the quarrying justify the exclusion of shale excavation is unfounded. There are only two residences within 500 feet of the working excavation and another residence is 1200 feet from the pit. The excavation is 440 feet from the nearest property line, and the pits cannot be seen from neighboring properties. The board found no incidents of damage to the neighboring properties and expressly found that "the blasting which occurred at the applicant's property in late

---

[14] Board's Finding of Fact No. 97.

July 1979 did no damage to the Bullock residence which adjoins the Mt. Airy shale quarry.''[15]

Also, although the board found that ''a permanent quarry operation on the [Mt. Airy Lodge land] would depress property values to some extent,''[16] it also found that ''[r]eal estate values in the area of [Mt. Airy's quarry] have increased in value over the past ten years.''[17]

Finally, the township asserts that its long term zoning plan contemplates greater industrial use.[18] However, such a plan does not rectify the exclusionary zoning ordinance.

Therefore, we conclude that Mt. Airy has met its burden of establishing that the zoning ordinance is exclusionary because the township, required to show justification for this municipality-wide prohibition of

[15] Board's Finding of Fact No. 104. *See Exton Quarries*, 425 Pa. at 63-64, 228 A.2d at 181, where our Supreme Court said:

While we can appreciate the great desirability of quiet and tranquility, this does not raise it to a consideration of constitutional significance. Moreover, even assuming the substantial relationship to public health of quiet in an area closely located to a hospital or to general welfare where noise would interfere with the efficient operation of a school, we fail to see how a township, which according to its zoning map contains one area of over three-square miles in which no schools or hospitals are located and in which there are less than 100 residences, and other buildings, could constitutionally prohibit quarrying throughout its borders on the grounds of the noise and vibration.

[16] Board's Finding of Fact No. 124.

[17] Board's Finding of Fact No. 126.

[18] The Paradise Township Zoning Ordinance was adopted on township's comprehensive plan on May 3, 1971. There is no industrial zoning within Paradise Township, nor has there ever been although the township's comprehensive plan calls for "about 130 acres to be set aside for industrial use, [because] the township could absorb such development and thus increase its tax base without losing its desirable characteristics."

a legitimate class of use, failed to present sufficient evidence indicating that the prohibition bears a substantial relationship to the township's health, safety, morals and general welfare.[19]

Accordingly, the decision of the court of common pleas is reversed.[20]

ORDER

Now, September 1, 1982, the order of the Court of Common Pleas of the Forty-third Judicial District, Monroe County Branch, entered on April 28, 1981, as No. 788, June Term, 1979, and No. 2525-1980-Civil, Zoning Appeal, is hereby reversed; and the record is remanded with direction to the zoning authorities of the Township of Paradise to issue the zoning permit.

---

[19] Because of our finding that the Paradise Township zoning ordinance is exclusionary, we need not consider Mt. Airy's contention that the portion of the township's zoning ordinance which regulates noncommercial extraction of natural resources, but does not contain any standards or criteria or other procedural safeguards, is invalid on its face.

[20] Our Supreme Court, in *Casey v. Zoning Hearing Board of Warwick Township*, 459 Pa. 219, 228, 328 A.2d 464, 468 (1974), said that, "an applicant, successful in having a zoning ordinance declared unconstitutional, should not be frustrated in his quest for relief by a retributory township," and directed that building permits applied for be issued upon compliance by the applicant with all administrative requirements of the zoning ordinance in effect on the date of the original application. *See also Ellick v. Board of Supervisors, Worcester Township*, 17 Pa. Commonwealth Ct. 404, 417. 333 A.2d 239, 247 (1975).