461 A.2d 771

**In re Appeal of ELOCIN, INC., From the Denial of its Challenges to the Validity of the Zoning Ordinance and Map of Springfield Township, Delaware County, and of Its Curative Amendment Application by the Board of Commissioners of Springfield Township, Appellants.**

Supreme Court of Pennsylvania.

Argued Jan. 25, 1983.

Decided April 27, 1983.

Lloyd R. Ziff, Philadelphia, for Margaret Ziff, et al.

Harry J. Bradley, Media, Jan Z. Krasnowiecki, Philadelphia, for Springfield Tp.

James D. Crawford, Richard D. Birns, Philadelphia, for Elocin, et al.

Before ROBERTS, C.J., and NIX, LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON and ZAPPALA, JJ.

OPINION

ZAPPALA, Justice.

Petitioner, Elocin, Inc. (hereafter "Elocin"), applied to the Board of Commissioners of Springfield Township (hereafter "Springfield"), Delaware County, for a curative amendment to the township zoning ordinance. The purpose of the amendment was to allow Elocin to proceed with a development proposal on a certain tract of land it owns (hereafter "Elocin tract"). The Board of Commissioners denied the curative amendment. Elocin appealed to the Court of Common Pleas of Delaware County, which upheld the decision of the Board of Commissioners. The Commonwealth Court reversed, 66 Pa.Cmwlth. 28, 443 A.2d 1333, holding that the zoning ordinance was invalid, and remanded the case to the Court of Common Pleas for consideration of the reasonableness of Elocin's development proposal. We granted cross petitions for allowance of appeal by Springfield and Elocin. Springfield seeks to reinstate the order of the Court of Common Pleas. Elocin seeks definitive relief without the necessity for a remand.

The Elocin tract has an area of sixty-four (64) acres. Elocin proposes to construct 567 mid or high-rise apartment units and 305 townhouse units. That is contrary to the zoning ordinance, which places the Elocin tract in an "A residence" district, where the only type of residence permitted is a single-family detached home. The ordinance provides for other types of districts in which semi-detached homes, two-family homes and apartment houses are permitted. Apartment houses may contain no more than four units. They may have no more than two stories, and their height may not exceed thirty-five feet. The ordinance makes no provision for townhouses or mid or high-rise apartments.

Evidence introduced at hearings before the Board of Commissioners established the following facts: Approximately twelve percent of the housing in Springfield is in multi-family dwellings in the form of twin homes or apartments. Springfield contains approximately 160 acres of undeveloped land, which is approximately four percent of the total land area. Of the land in the Elocin tract, 18.8% is within a 100-year flood plain, 31% consists of slopes with grades in excess of 15%, 8.4% is in an area of high water table, and 62% is under heavy tree cover.

■ The issue is whether the ordinance is unconstitutionally exclusionary. An ordinance will be so held if it does not make reasonable allowance for legitimate uses. On that basis, we struck down a zoning ordinance that imposed a four-acre minimum lot size on certain residential districts. *National Land and Investment Co. v. Easttown Township Board of Adjustment,* 419 Pa. 504, 215 A.2d 597 (1965). While we did not hold the minimum lot size unconstitutional per se, we held that the municipality had not advanced any argument that sustained the constitutionality of the ordinance as applied to the property in question under the circumstances. We further held that a municipality could not use zoning to avoid the responsibilities and economic burdens of population growth. Similarly, in *Concord Township Appeal,* 439 Pa. 466, 268 A.2d 765 (1970), we held two and three-acre minimum lot sizes unconstitutional in the absence of extraordinary circumstances.

In a number of cases, we have struck down zoning ordinances that completely banned particular uses from the municipality. We struck down bans on off-size sign advertising, *Norate Corp. v. Zoning Board of Adjustment,* 417 Pa. 397, 207 A.2d 890 (1965), and flashing and intermittent lights, *Ammon R. Smith Auto Co. Appeal,* 423 Pa. 493, 223 A.2d 683 (1966). We clarified the law in that area in *Exton Quarries, Inc. v. Zoning Board of Adjustment,* 425 Pa. 43, 228 A.2d 169 (1967), where we struck down a ban on quarrying in a sparsely populated and undeveloped municipality. We held there that a zoning ordinance may ban selected uses

from an entire municipality, but such ban must have a reasonable relationship to public health, safety, morals and general welfare, which relationship must be greater than that required if the uses are merely confined to particular areas.

In Girsh Appeal, 437 Pa. 237, 263 A.2d 395 (1970), we held that a zoning ordinance that failed to provide for apartments was unconstitutionally exclusionary, although apartments were not explicitly prohibited. The ordinance was improper in that it unreasonably failed to provide for a legitimate use. We held that where a municipality is a logical place for development, it may not by zoning avoid carrying its rightful part of the burden of population growth. In Township of Willistown v. Chesterdale Farms, Inc., 462 Pa. 445, 341 A.2d 466 (1975), we struck down an ordinance that provided for apartments in only eight of 11,589 acres in a township. We held that the township was required to provide a fair share of land for apartments. In Surrick v. Zoning Hearing Board of the Township of Upper Providence, 476 Pa. 182, 382 A.2d 105 (1977), we held that the land use regulations of a municipality must meet the legitimate needs of all categories of people who desire to live within its boundaries. In determining whether a municipality meets the fair share test, a court is to look to whether the zoning reflects a balanced consideration of regional needs and development. It is necessary to inquire into whether the municipality is a logical area for population growth and whether it is already highly developed. It is also necessary to inquire into the actual effect of a zoning ordinance on the availability of multi-family dwellings.

In the instant case, Springfield is in an area that has experienced growth in population. Springfield itself has grown and developed significantly in recent decades. Its development has reached a high level and covered most of its land area. Twelve percent of its housing units are in multi-family dwellings. We find that to be a fair share for such use under the criteria established in our prior cases. We make that finding not only on the basis of the percent-

age of multi-family dwelling units, but also on the basis of the degree of development and the small amount of undeveloped land. We further find that given the nature of the Elocin tract, the refusal to allow the proposed development is reasonably related to the public health, safety and welfare of Springfield. Under the circumstances, the ordinance is not unconstitutionally exclusionary.

Elocin claims that the ordinance is improper in failing to provide for townhouses and mid- and high-rise apartments. It argues that these are legitimate uses for which reasonable provision must be made. We do not agree that a municipality must necessarily provide for every conceivable use. Where a municipality provides for a reasonable share of multi-family dwellings, as Springfield has done, it need not provide for every conceivable subcategory of such dwellings. We so held in *Appeal of Kravitz,* 501 Pa. 200, 460 A.2d 1075 (1983), decided contemporaneously with the instant case. As we noted in *Kravitz,* our decision in *Girsh, Supra,* dealt with a situation where a zoning ordinance made no provision for any type of multi-family dwelling. There we did not decide whether a muncipality could meet its fair share obligation by providing for some specified form or forms of multi-family dwellings and allowing other forms only by variance or special exception. Applying the test of *Surrick, Supra,* here, we consider whether the area is logical for development and growth, the degree to which it is developed, and whether the exclusion is total or partial. Springfield is not a logical area for development and growth. We so find because, as we have noted, most of its land is already developed. The exclusion is partial, not total, in that there are multi-family dwellings in some parts of Springfield, although such dwellings are excluded from other parts. We find the analysis of *Kravitz* to be controlling and incorporate it here.

In addition to the Petitions for Allowance of Appeal of Springfield and Elocin, we granted a petition of intervening parties Lloyd and Margaret Ziff and George W. Belk, III. The intervenors own homes in the vicinity of the Elocin

tract. They intervened in the proceedings for the purpose of opposing the application for a curative amendment. They were not permitted to communicate with the Board of Commissioners outside of the hearings. Such prohibition applies to all parties to a zoning proceeding during the course of the hearings. *Municipalities Planning Code,* Act of July 31, 1968, P.L. 805, Art. IX, § 908(8), 53 P.S. § 10908(8). The intervenors claim that the prohibition violated their rights to engage in free speech and to petition for redress of grievances and the Commissioners' right to receipt of speech. They also claim a violation of equal protection, in that Elocin communicated privately with the Board of Commissioners before formally filing for relief. By our resolution of the case, we have reached the result sought by the intervenors. Therefore, we find their claim to be moot.

The Order of the Commonwealth Court is reversed, and the Order of the Court of Common Pleas is reinstated.

FLAHERTY, J., concurred in the result.

NIX, J., filed a dissenting and concurring opinion.

HUTCHINSON, J., filed a dissenting and concurring opinion.

LARSEN, J., dissents and would affirm based upon the opinion of the Commonwealth Court, *In re: Appeal of Elocin, Inc.,* 66 Pa.Cmwlth. 28, 443 A.2d 1333 (1982).

NIX, Justice, concurring and dissenting.

The majority persists in its failure to recognize that townhouses provide a distinct legitimate use which is not satisfied by adequate provision within the municipality for multi-family dwellings. By condoning Springfield Township's total exclusion of townhouses within its borders, the majority forecloses the development of a less expensive form of housing in a convenient Philadelphia suburb whose present population density is below average for Delaware County and whose projected population growth is significant. Proper analysis under the test announced by this

Court in *Surrick v. Zoning Hearing Board of Upper Providence Township,* 476 Pa. 182, 382 A.2d 105 (1977), requires the conclusion that Springfield Township is not so highly developed that it may escape its constitutional obligation to make available a "fair share" of its area for the affordable housing which townhouses are uniquely able to provide and for those who must find such housing now and in the future.

Thus, I am compelled to dissent from that portion of the majority opinion which upholds the constitutionality of the zoning ordinance as to its total exclusion of townhouses. I would remand this matter to the Court of Common Pleas for consideration of Elocin's proposed plan for that type of housing in Springfield Township.

HUTCHINSON, Justice, concurring and dissenting.

Springfield Township provides for multi-family use in zones allowing two story apartments. I do not believe that mid-rise or high-rise apartments constitute distinct multi-family uses for which separate provision must be made. Therefore, I agree with the majority's holding that this zoning ordinance is not unconstitutionally exclusionary in failing to additionally provide for mid-rise and high rise apartments.[1] However, for the reasons recited in my dissenting opinion in *Appeal of Kravitz,* 501 Pa. 200, 460 A.2d 1075 (1983), I would hold that the Springfield Township ordinance may not totally exclude townhouses. I do not believe the fair share test adopted by this Court in *Surrick v. Zoning Hearing Board of Upper Providence Twp.,* 476 Pa. 182, 382 A.2d 105 (1977) with its distinction between "developing" and "developed" communities is applicable where a municipality fails to provide in its zoning ordinance for a distinct and legitimate residential use. The fact that 250 twin homes exist in the Township as non-conforming uses

---

1. Although I am troubled by the fact that much of the multi-family housing in this township is non-conforming I am not prepared to say that the remaining twenty-nine clear acres zoned for apartments is a mere token. *See Girsh Appeal,* 437 Pa. 237, 263 A.2d 395 (1970) (plurality opinion); *Dublin Properties v. Upper Dublin Twp.,* 21 Pa. Commonwealth Ct. 54, 59, 342 A.2d 821, 823 (1975).

does not serve to cure the defect caused by the total exclusion. If it did, a municipality would be able to freeze its development at any stage it desired. Living communities are at least dynamic things and cannot cease developing.[2]

However, because there is substantial evidence in the record that Elocin's site is unsuitable for intensive residential development, I would remand the case to Common Pleas for consideration of the reasonableness of that portion Elocin's plans for townhouses on this site as provided in Section 1011(2) of the Pennsylvania Municipalities Planning Code. Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. § 11011(2).

**2.** *See e.g. Girsh Appeal, supra; Dublin Properties v. Upper Dublin Twp.,* 21 Pa. Commonwealth Ct. 54, 59, 342 A.2d 821 (1975). There is nothing in this record that would support a conclusion that the presence of these non-conforming twin homes would cause the addition of townhouses on the minimal open acreage of this township to have such an incremental impact as to be the "final straw" which totally disturbs the character of the community. *See Township of Paradise v. Mt. Airy Lodge,* 68 Pa. Commonwealth Ct. 548, 449 A.2d 849 (1982). This issue is clearly recognized and carefully articulated by Judge MacPhail writing for the unanimous court below.